UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HEMANT K. MODY, PhD,                    :
    Plaintiff,                              :
                                            :          CIVIL ACTION NO.
        v.                                  :          3-04-cv-358 (JCH)
                                            :
GENERAL ELECTRIC COMPANY,               :
    Defendant                               :
                                            :          February 21, 2006

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Doc. Nos. 42 & 43]**

**I. INTRODUCTION**

Dr. Hemant K. Mody, PhD ("Mody"), the plaintiff in this action, is an electrical engineer who was employed by the General Electric Company ("GE"), the defendant. He has asserted twelve claims against GE.  Counts I, II, III, and V allege discrimination on the basis of age, race, and national origin, in violation of the Age Discrimination in Employment Act ("ADEA"); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn.Gen.Stat. § 46a-60(a) et. seq.  Counts IV, VI, VII, and VIII allege that GE retaliated against him in violation of the same statutes.  Counts IX and X allege liability on theories of promissory estoppel and negligent misrepresentation.  Count XI alleges negligent infliction of emotional distress.  Count XII alleges violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1).

GE has moved for summary judgment on all twelve claims.  Mody has moved for summary judgment only on Count XII (FMLA claim).  The court will discuss the facts

1

relevant to each of Mody's claims as it takes up each claim in the Discussion section below.

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden lies on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted); accord Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ."  Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

2

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523 (internal citation omitted).  Thus, "'[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. (quoting Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991)); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992) ("Viewing the evidence in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is inappropriate.").  "'If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"  Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading." Fed. R. Civ. P. 56(e); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment.  Id.  "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western

3

World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## III. FACTS[1]

The plaintiff, Hemant K. Mody ("Mody"), is a 51-year-old-male of Asian Pacific origin, who was born in India. He holds a bachelor degree in electrical engineering and a doctoral degree in electric power engineering and has extensive experience in those fields. He also suffers from severe chronic renal disease and, since 1999, has been required to undergo daily dialysis treatment.

Mody was hired by GE Industrial Systems ("GEIS"), a division of the defendant corporation, General Electric Company ("GE"), in June 1998. At the time of his hire, the plaintiff was 44 years of age. GE hired him as Chief Engineer in the New Product Introduction Department ("NPI"), a position classified as Senior Professional Band ("SPB"). SPB is two levels below GE's most senior "Band" level (or level of seniority). The fourth page of the employment application that Mody signed prior to his hire contained the following language:

> I understand that any employment with the Company would not be for any fixed period of time and that, if employed, I may resign at any time for any reason or the Company may terminate my employment at any time for any reason in the absence of a specific written agreement to the contrary. I understand that my employment at-will status may not be modified or changed except in writing signed by an officer of the Company.

---

[1]To the extent they are undisputed, this section sets forth material facts in the parties' local Rule 56(a) statements and accompanying exhibits. To the extent that potentially material facts are disputed, the court notes such dispute.

Def.'s Mem. Supp. Def.'s Mot. Summ. J., Ex. 1 [Doc. No. 42-3].  The parties dispute

whether Indra Purkayastha, the GE executive who hired Mody, made any promise of

promotion to him.  Purkayastha testified at his deposition that he did not remember

precisely what he told Mody at the time of his hire, but that Purkayastha would usually

tell new employees that "[f]undamentally GE is a performance-driven company, and if

you show, deliver results, you'll be able to move up in the company."  Purkayastha Dep.

at 15 [Doc. No. 42-9].  Mody testified in his deposition that Purkayastha told him

> that at GE the time to promotions is not very long once they recognize that
> you meet a certain criteria.
>
> And that criteria according to him was that you should have good
> technical skills and good people skills.  And that if you did well on these
> two axes the promotion rate is very fast.

Mody Dep. at 81 [Doc. No. 42-6].  GE disputes that Purkayastha gave any time frame.

Shortly after hiring him, GE transferred Mody to another position at the same

band, under supervision of Guillermo Wille.  The record contains undisputed evidence

that Wille was very satisfied with Mody's technical skills.  See Wille Dep. at 24, 26; Plf.'s

App. Ex. Supp. Mot. Summ. J. [hereinafter "Plf.'s App."], Ex. 65 at D0000164 [Doc. No.

50-6] [sealed][2]; Ex. 66 at D0000164 [sealed].  However, in his assessments of Mody,

Wille also expressed concern about Mody's managerial and interpersonal skills, see

Wille Dep. at 24, 26, 50-51, 53 [Doc. No. 42-7];  Plf.'s App. Ex. 65 at D0000164 [sealed]

 In several annual reviews, Wille gave Mody a "B" rating for performance, id.; Plf.'s

---

[2]The parties are requested to refer to the conclusion of the ruling for instructions on filing redacted
versions of those previously sealed documents on which the court relies in this ruling.  In the text of this
ruling, the court will accompany citations to sealed documents upon which it relies with the word "sealed"
in brackets.

App., Ex. 66 at D0000172, D0000179 [sealed], which was the middle of three possible ratings, and a promotability rating of "3," id., which corresponds to "Valued in current or similar assignment."[3]  Plf.'s App. Ex. 13.

In late 2001, Mody came under the supervision of Dr. Don McDonald.  On or around April 23, 2003, GE employee Karen Lausier made a presentation regarding the Edison Engineering Development Program (EEDP).  Mody was not part of this program but attended the staff meeting at which Lausier was speaking.  He alleges, and GE denies, that Lausier explained a drop in the number of Indians hired by EEDP in the United States by stating that the program had hired many engineers in India.  Mody complained to Tom Lavalle, the GEIS Human Resources Manager, about this statement.

The parties dispute whether either of the changes to Mody's position during his time at GEIS constituted "promotions."  However, the record contains evidence, only some of which is disputed, that Mody told both Wille and McDonald he wanted a promotion to the Executive Band (E-Band), see, e.g., Plf.'s App. Ex. 65 at D0000164 [Doc. No. 50-6] [sealed]; Mody Dep. at 74, 110-11, Plf.'s App. Ex. 1 [Doc. No. 43-3], and that he was never promoted to that higher band.  Mody testified, and GE disputes, that McDonald and Lavalle informed him that he could not reach E-Band because he was on a technical, rather than managerial, career path and would have to return to a

---

[3]A rating of 1 would be the highest promotability rating, a rating of 4 indicates that the employee has not been working long enough to determine promotability, and a rating of 5 stands for "Not Succeeding in Current Position." Plf.'s App. Ex. 13.

much lower position in order to switch tracks.  Mody Dep. at 79, 85-86, 88, Plf.'s App. Ex. 1 [Doc. No. 43-3].

It is undisputed that, during the time of his employment, several younger, white employees were promoted to E-Band, see Plf.'s App. Ex. 67 at D00001161 [sealed], and Mody presented disputed evidence of several other, similar promotions, Mody Dep. at 191-207.  The plaintiff has also presented some evidence, which GE disputes, that GE used salary planning guidelines that could have encouraged supervisors to rank lower-paid employees higher than employees receiving higher salaries, with the purpose of keeping overall compensation costs low, and that the employees receiving lower salaries tended to be younger than those receiving higher salaries.[4]  See Fuselier Dep. at 97-101, Plf.'s App. Ex. 4; 2002 Salary Planning Manager's Guide, Plf.'s App. Ex. 15.  Age and minority status of individual employees were noted in GEIS personnel files.

On July 22, 2002, Mody wrote a memorandum to Lavalle, copied to Fuselier and McDonald, asserting that he was being discriminated against on the basis of age or minority status in being passed over for promotions that went to candidates who were less qualified.  Plf.'s App. Ex. 25.   On August 12, after having met with Mody, Lavalle replied with a letter stating that the other employees whom Mody had referenced were "performing different job functions" than Mody, and that Mody had "failed to state any basis" for his allegation of discrimination.  Plf.'s App. Ex. 24.  He also stated that Mody

---

[4]In contrast, the court finds only conclusory assertions, and no evidence, that GE kept track of the race or national origin of its employees in a manner that was intended to restrict promotions of those of Indian or Asian origin.

had mischaracterized Lausier's statements regarding the hiring of Indians by EEDP, and that he would treat Mody's memo as an alternative dispute resolution submittal. Plf.'s App. Ex. 24 at D0000205.

Following this letter, Lavalle, Fuselier, and GE in-house counsel Grace Hahn began monitoring Mody's conduct and attendance.  The parties dispute whether his attendance and punctuality changed, or whether the supervisors' response to his routine medical absences changed.  McDonald sent several emails to Mody regarding absences, latenesses, and failure to produce certain work on time and also reported on these issues to Fuselier.  Plf.'s App. Ex. 27-29.  Mody responded with several emails responding to McDonald's criticisms.  He did not mention age, race, or national origin in these emails.  However, in the October 29, 2002 email McDonald and Lavalle, he wrote in part, "I have expressed to you and others on several occasions that I cannot keep playing the role of a 'techno caddy' helping the system promote less qualified and less competent people at the expense of my knowledge and contributions as this is discrimination."  Plf.'s App. Ex. 28, 29.  In an email to Lavalle on October 25, he also followed up on a request for information from his July 2002 complaint.  Id.  Mody testified, and GE denies, that McDonald threatened him, saying "there are things I can ask you to do that if I asked you to do them, you would just quit." Mody Dep. at 150, Plf.'s App. Ex.1 [Doc. No. 43-3].

In December 2002, a younger, more junior, co-worker named Heather Pugliese emailed Mody, telling him that she and another employee needed him to "drive the DOE [Department of Energy] submittal and funding approach" for a technology he had developed and giving him specific instructions on how to do so.  Def.'s Mem. Supp.

8

Mot. Summ. J. Ex. 9 at 2 [Doc. No. 42-12].  Mody viewed this task as menial.  He

responded with an email stating, "It is a tribute to your poor judgment that you would

send this request to me.  Even <u>you</u> should be able to do this on your own without the

Chief Engineer's help and guidance."  <u>Id.</u> at 1 (emphasis in original).  McDonald

emailed him a reprimand, and Mody responded by alleging that the DOE funding work

request was retaliation for raising discrimination concerns.  Plf.'s App. Ex 39.  He

complained again to Lavalle, who wrote him an email on December 12 stating that he

needed specific details of alleged discrimination before he could investigate, and

reprimanding Mody for refusal to perform requested work.  <u>Id.</u>

 Mody called in sick to work for the next two days.  McDonald emailed Mody on

December 19th, advising him to contact GE's nurse and, if appropriate, GE's outside

vendor responsible for processing disability claims to apprise them of his status and the

reason for his absence.  Plaintiff subsequently took FMLA leave.  On January 21, while

Mody was still on leave, McDonald emailed Lavalle, saying in relevant part, "Could you

let me know what the next steps are with Hemant.  I would like to know when we will

take the appropriate steps."  Plf.'s App. Ex. 44.  Lavalle responded, in pertinent part,

"Nothing to do until he comes back to work . . . then we act per our previous discussion.

Do the work requested, if not suspend then terminate.  If he does the work LOW [lack

of work] due to business need to reduce costs."  <u>Id.</u>

 On the morning of February 24, Mody returned to work, and McDonald instructed

him to perform the DOE work by a certain time, saying that failure to follow his

instructions would result in disciplinary action for insubordination.  Mody complained to

Fuselier that the work was retaliatory.  <u>See</u> Plf.'s App. Ex. 45 at D0000211.  At noon,

Mody left a note on McDonald's desk, stating, "I am taking a half day vacation this afternoon." Plaintiff did not return to work on the following day. McDonald then sent him a letter stating that, "due to [Mody's] insubordinate conduct," he was being suspended without pay, "pending further investigation." Def.'s Mem. Supp. Summ. J., Ex. 12 [Doc. No. 42-12]. He instructed Mody to return company property. Id. The parties dispute whether Mody sent a reply letter alleging that he was being retaliated against. McDonald sent Mody a second letter, dated March 5, 2003, but which Mody states he received on March 10, again accusing Mody of insubordination and stating that he would be terminated if he did not return to work by March 7. Plf.'s App. Ex. 50. McDonald sent another letter, dated April 4, stating that Mody was terminated as a result of "failure to return to work" and "job abandonment." Id.

## IV. DISCUSSION

### A. Discrimination Claims (Counts I, II, III, & V)

#### 1. McDonnell Douglas Framework

Mody alleges that his superiors at GE denied him promotions, and ultimately terminated him, on the basis of his age, race, and/or national origin, in violation of the Age Discrimination in Employment Act ("ADEA") (Count I) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (Count II); 42 U.S.C. § 1981 (Count III), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a) et. seq. (Count V).

The parties agree that all of these claims should be analyzed under the burden-shifting Title VII analysis first announced in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802 (1973).[5]  Schnabel v.  Abramson, 232 F.3d 83, 87 (2d Cir. 2000)

(applying McDonnell Douglas in ADEA context); Brittell v. Dep't of Correction, 717 A.2d

1254, 1264 (Conn. 1998) (holding that law interpreting Title VII guides interpretation of

CFEPA); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (applying same

prima facie test to Title VII and § 1981 claims); Staff v. Pall Corp.,  76 Fed.Appx. 366,

368 n. ** (2d Cir. 2003) ("Claims under § 1981 are analyzed under the same framework

as claims brought pursuant to Title VII"); Jackson v. Health Resources of Rockville, Inc.,

357 F.Supp.2d 507, 514 (Hall, J.) (holding that Title VII, CFEPA and § 1981 race-based

employment discrimination claims are analyzed under McDonnell-Douglas framework);

see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-149 (2000); St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-511 (1993); Texas Dep't of Cmty. Affairs

v. Burdine, 450 U.S. 248, 253-256 (1981).

    The initial burden lies on the plaintiff.  To establish a prima facie case, the

plaintiff must show (1) that he was within a protected class, (2) that he was qualified for

the position he held, (3) that he suffered an adverse employment action, and (4) that

such action occurred under circumstances giving rise to an inference of discrimination

based on a protected ground (here, age, race, or national origin).  See McDonnell

Douglas, 411 U.S. at 802.  Once a plaintiff has established a prima facie case, a

rebuttable presumption of discrimination arises, and the burden shifts to the defendant

--------

[5]The Second Circuit continues to apply the McDonald Douglas-Burdine-Hicks burden-shifting
analysis to Title VII claims at the summary judgment stage, see, e.g., Woodman v. WWOR-TV, Inc., 411
F.3d 69, 76 (2d Cir. 2005); Feingold v. New York, 366 F.3d 138 (2d Cir. 2004), even though some other
courts have declined to apply it following the Supreme Court's decision in Desert Palace, Inc. v. Koster,
539 U.S. 90 (2003).  E.g., Dare v. Wal-Mart Stores, Inc., 267 F.Supp.2d 987(D.Minn.2003).

to offer a legitimate, non-discriminatory reason for its actions.  See Burdine, 450 U.S. at 254.  Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination that arose with the establishment of the prima facie case drops out, see St. Mary's Honor Ctr., 509 U.S.  at 510-11, and the burden shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment action.  Reeves, 530 U.S. at 143.  In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination.  Id.  A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. Schnabel, 232 F.3d at 89-91 (citing Reeves, 530 U.S.).  The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143).   Although neither party has specifically presented this case as a "mixed motive" case, the court notes that Mody need not show that age or race was the only factor motivating any adverse employment actions he suffered in order to make a showing of employment discrimination.   See 42 U.S.C. §2000e-2(m); Desert Palace, Inc. v. Koster, 539 U.S. 90 (2003).  "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason,"

12

regardless of whether the case is presented as one of single or dual motive.  Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir. 1997).

The only element of the prima facie case that GE challenges on summary judgment is the fourth: that the adverse employment actions (failure to promote and termination) occurred under circumstances giving rise to an inference of discrimination. Def.'s Mem. Supp. Summ.J. (Doc. No. 42-1) at 18. Where an employer's intent is at issue, the court must be cautious about granting summary judgment, as circumstantial evidence may sometimes give rise to a genuine issue of material fact.  See Kerzer v. Kingly Mfrg., 156 F.3d 396 (2d Cir. 1998); McLee v. Chrysler Corp., 109 F.3d 130 (2d Cir. 1997).

### 2. Failure to Promote

In the context of failure to promote claims, the Second Circuit has held that the fourth element of the McDonnell Douglas prima facie case – the only one presently in dispute – typically requires a showing that the higher position for which a plaintiff had applied and from which he had been rejected "remained open and the employer continued to seek applicants having the plaintiff's qualifications." Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir.1998)).  However, it has also noted that this rule is "subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement." Brown, 163 F.3d at 710.

Even though the manner in which GE made promotion decisions did not permit Mody to formally apply for specific positions, Mody did identify individual promotion decisions in which he asserted that GE had overlooked his clearly expressed requests

13

for promotion in order to promote other individuals.  The court finds a genuine issue of material fact exists as to whether the GE supervisors making the individual promotion decisions to which Mody referred in his deposition rejected Mody's application and then continued to seek other applicants having the same qualifications.  Other employees, not in the same protected classes, were promoted to E-Band positions in relevant fields during the time in which Mody was requesting similar promotions.  Although the parties dispute Mody's managerial skills, the record contains evidence that Mody had technical qualifications  superior to most of the individuals who received E-Band promotions during times when Mody allegedly was requesting these promotions. Viewing the evidence in a light favorable to Mody, the court concludes he has met the "de minimus" burden of a prima facie case. Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (stating that prima facie case is "de minimus"); cf. Byrnie v. City of Cromwell, 243 F.3d 93, 102 (2d Cir. 2001) (holding that a 64-year-old teaching job applicant who had previously been employed by the same school district "easily made out a prima facie case" of age discrimination because the district hired a significantly younger employee in his place and where the plaintiff "was eminently qualified" for the position).

The court finds that GE has articulated a legitimate, non-discriminatory business reason for the failure to promote Mody.  His supervisors, both in contemporaneous assessments and in depositions, expressed concerns about his interpersonal and managerial skills.  See, e.g., Wille Dep. at 24, 26, 50-51 [Doc. No. 42-7]; Plf.'s App. Ex. 65 at D000164 [Doc. No. 50-6] [sealed], Ex. 66 at D0000164; D0000171, D0000179

[Doc. No. 50-6] [sealed].  With only a few exceptions,[6] the performance assessments of the individuals who were promoted to E-Band during the relevant time period indicate strong interpersonal and/or leadership skills.  See Def.'s Reply to Plf.'s Mem. Opp. Def.'s Mot. Summ. J. Ex. B [Doc. No. 53] (performance reviews); see also Fuselier Dep. at 135-37 (stating that Mike von Kannewurff and Paul Singer had strong backgrounds in their particular fields).

Thus, the court must determine whether Mody has made the requisite showing to establish pretext, and to carry his ultimate burden of showing genuine issues of material fact as to whether intentional discrimination occurred.

> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination.  In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

Byrnie, 243 F.3d at 103.  Applying this standard, the court finds that the discrepancies in qualifications cited by Mody are not sufficient to carry his ultimate burden in the McDonnell Douglas test.

Moreover, Mody has not presented any other evidence sufficient to survive summary judgment.  Although the GE compensation planning guidelines, if applied in a strict fashion, might result in supervisors assigning lower ratings to more highly compensated – and often older – employees, this evidence would not be sufficient for a

---

[6]The court has in mind assessments of an employee with the initials T.B.  See Def.'s Reply to Plf.'s Mem. Opp. Def.'s Mot. Summ. J. Ex. B at D0000681, D0000688, D0000694, D0000700, D0000701, D0000707 [Doc. No. 53].

jury to find discrimination on the basis of age for purposes of the ADEA.  The Supreme

Court has held that evidence that an adverse employment action was based on an

employee's years of service is not sufficient to establish an ADEA violation, even where

the "years of service" criterion was correlated with age.  Hazen Paper Co. v. Biggins,

507 U.S. 604, 608-14 (1993); see also Smith v. City of Jackson, 125 S.Ct. 1536, 1543

(2005) (stating that, in Hazen Paper, the Court "held that an employee's allegation that

he was discharged shortly before his pension would have vested did not state a cause

of action under a disparate-treatment theory," as opposed to a disparate impact theory)

(emphasis in original).  An ADEA disparate treatment claim "cannot succeed unless the

employee's protected trait actually played a role in [the employer's  decisionmaking]

process and had a determinative influence on the outcome." Johnson v. State of New

York, 49 F.3d 75, 78 (2d Cir. 1995) (quoting Hazen Paper, 507 U.S. at 610) (bracketed

text in Johnson)).  Mody has not proffered any evidence that the compensation

planning guidelines were intended to discriminate against older employees, nor that

they were applied in a manner from which a jury could infer supervisors' intent to

discriminate against Mody on the basis of age.

Mody's accounting of the numbers of GEIS Plainville employees of various races

and ages who were promoted, who were not promoted, and who were given positive

promotability and performance assessments, see Plf.'s Rule 56(a)1 Statement ¶ 15

[Doc. No. 43-2], is similarly insufficient to carry his ultimate burden of proffering

evidence at the summary judgment stage.  He has not proffered such evidence about

the qualifications of each of these employees as would be necessary to permit an

inference that younger or non-Indian employees who were promoted were "similarly

situated in all material respects" to Mody.  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997)).  Similarly, while presenting some evidence that certain GE employees at the Plainville facility feared that jobs would be outsourced to India, Mody does not present evidence that these fears led GE to discriminate against employees of Indian origin in promotion decisions.  Even if the court credits Mody's testimony as to Karen Lausier's comments, these comments do not establish discriminatory motive.  They did not refer to promotions, she had no control over Mody's promotion prospects, and Mody has presented no evidence that those who did control his promotion shared Lausier's views. "[A]n employer's intent to discriminate must be evaluated by reference to the decision-maker actually ordering the adverse employment action, not to other persons in the company."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 89 (2d Cir. 2005) (internal citations omitted).

Thus, the court grants summary judgment on Mody's discriminatory failure to promote claims.

### 3. Termination

To establish a prima facie case based upon a claim of termination, "a plaintiff must show (1) that he was within the protected age [or race or national origin] group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age [or race or national origin] discrimination." Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (internal quotation marks and citation omitted).  The only element presently disputed is the fourth.  The court finds no evidence on the record that could give rise to an

17

inference that Mody's termination, as distinct from the failures to promote him, resulted from age, race, or national origin discrimination.[7]  Although the email that Lavalle sent on January 21 does create a genuine issue of fact as to the veracity of GE's assertion that it fired Mody for "insubordination and job abandonment," Plf.'s App. Ex. 44 at D000011, the record contains no evidence that the true motivation behind the termination decision was age, race, or national origin discrimination.

### B.  Retaliation Claims (Counts IV, VI, VII, VIII & XII)

Mody further alleges that he was denied promotions, and ultimately terminated, in retaliation for his efforts to protect his rights under Title VII (Count VI), the ADEA (Count VII), section 1981 (Count IV), the CFEPA (Count VIII), and the Family Medical Leave Act (Count XII).  The court discusses the FMLA claim in this section, rather than in the manner proposed by GE, see Def.'s Mem. Supp. Mot. S.J. at 33 (Doc. No. 42-1), because Mody's factual allegations and arguments show that he is alleging a violation of 29 U.S.C. § 2615(a)(1)[8] in the form of retaliation for use of FMLA leave, rather than alleging that GE violated this provision by preventing his exercise of FMLA leave rights in the first instance.  See Potenza v. City of New York, 365 F.3d 165, 167-68 (2d Cir. 2004) (treating retaliation claims as a subset of claims that may be made under 29 U.S.C. § 2615(a)(1) and holding that courts should consider such retaliation claims under a McDonnell Douglas analysis).  The defendants have moved for summary

---

[7]For example, there is no evidence that Mody was replaced with a younger employee or one of a different race or national origin.  Cf. Schnabel, 232 F.3d at 87.

[8] This section states that, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

18

judgment on all of the retaliation claims, and the plaintiff has moved only on the FMLA claim.

A retaliation claim follows the familiar burden shifting framework developed to evaluate allegations of disparate treatment. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005); see Potenza, 365 F.3d at 168 (holding that this framework is appropriate for FMLA retaliation claims). Once again, GE challenges only Mody's ability to establish the fourth prong of the prima facie case.[9]  This element generally requires the existence of "a causal connection between the protected activity and the adverse action." Galdieri/Ambrosini v. Nat'l. Realty & Dev. Corp., 136 F3d 276, 292 (2d Cir. 1998); see Jute, 420 F.3d at 173.  In the case of FMLA retaliation, the Second Circuit has stated this element as requiring that "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza, 365 F.3d at 168.

This element may be satisfied when an adverse employment action closely follows a protected activity, although the temporal proximity must be "very close." Clark City School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing cases holding periods of three to four months as too distant to support causal link); see Stevens v. Coach U.S.A., 386 F.Supp.2d 55, 62 (D.Conn. 2005) (holding, in FMLA retaliation case, that

---

[9]The first three elements require:

  1)    that [Mody] was engaged in protected activity by opposing a practice made unlawful by Title VII [or the ADEA, section 1981 or the CFEPA];

  2)    that the employer was aware of that activity;

  3)    that [Mody] suffered adverse employment action.

Galdieri/Ambrosini, 136 F3d at 292.

"[t]he fourth element of plaintiff's prima facie case, an inference of discrimination, is established by proximity between plaintiff's exercise of his FMLA leave and the adverse employment action, which immediately followed.").  A court may overlook a longer gap in time between protected conduct and an adverse employment action where "the pattern of retaliatory conduct begins soon after the filing of the [ ] complaint and only culminates later in actual discharge."  Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996) (Fair Labor Act retaliation claim) (citing Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 n. 4 (6th Cir.1984) (Title VII case)).

### 1. Termination

With respect to termination, the court finds that Mody satisfied the disputed element of the prima facie test for retaliation.  Although Mody wrote his initial memorandum alleging discrimination in June 2002, he continued to complain that he was being retaliated against for his discrimination complaint in the months that followed.  His last complaint, prior to termination, was on February 24, only a few weeks before his formal discharge.  This pattern of retaliatory conduct, combined with the temporal proximity of the last complaint to termination, gives rise to an inference that satisfies the fourth prong of the prima facie case for the retaliatory termination claims based on complaints of racial, national origin, and age discrimination.  Cf.  Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir.1986) (finding a one-month gap between resolution of complaint and adverse employment action sufficient to support fourth element of prima facie case).  Similarly, GE discharged Mody shortly after he returned from FMLA leave.  This temporal proximity gives rise to an inference that satisfies the fourth prong of the prima facie test with respect to FMLA retaliation.

GE has articulated two non-discriminatory reasons for the discharge: insubordination and job abandonment. However, Mody has presented evidence from which a fact-finder could conclude that these reasons were pretexts to cover unlawful retaliation. For example, the email Lavalle sent to McDonald during Mody's FMLA leave could give rise to an inference that GE intended to fire Mody for reasons unrelated to job abandonment. Moreover, there are disputed issues of fact as to whether the DOE funding assignment was itself retaliatory, intended to push Mody out of the company. If so, his refusal to do that work would not constitute a legitimate, non-retaliatory reason for termination. The record before the court demonstrates a genuine dispute of material fact as to whether GE intentionally discriminated against Mody for having taken significant FMLA leave in the period of time prior to his termination or whether GE terminated him for entirely different reasons. The record also shows a genuine issue of material fact as to whether GE intentionally discriminated against Mody for his allegations of race, national origin, and age discrimination. The court denies summary judgment to the defendant on all of the retaliatory discharge claims contained in Counts IV, VI, VII, VIII, and XII, and denies summary judgment to the plaintiff on the FMLA retaliatory termination claim (Count XII).

### 2. Other Retaliation Claims[10]

GE, in its memorandum in support of its motion for summary judgment, anticipates that Mody's retaliation claims are founded on his termination and GE's failure to promote him. [Doc. No. 42-1]. As Mody does not pursue the latter claim in his

---

[10]These claims include alleged violations of Title VII, the ADEA, the CFEPA, and section 1981, but not the FMLA.

21

memorandum in opposition to the defendant's motion for summary judgment, the court

need not consider it at length, and it grants the defendant's motion for summary

judgment with respect to any potential retaliatory failure to promote claim because the

plaintiff has not presented evidence of specific failures to promote occurring after the

date of Mody's memorandum alleging discrimination.

In addition to his retaliation termination claim, Mody argues in his memorandum

in opposition to GE's motion for summary judgment that he was retaliated against by

adverse treatment in the form of "an immediate scathing assessment just after an

excellent review a few weeks earlier, micro-managing and scrutinizing conduct which

pre-complaint had never been an issue, removing Dr. Mody from management of his

product he invented [the "Magic Panel"], failing to investigate or address any of his

complaints, [and] assigning demeaning work."  Plf.'s Mem. Opp. Def.'s Mot. Summ. J.

at 30 [Doc. No. 50].

> An adverse employment action is a materially adverse change in the
> terms and conditions of employment . . . . To be " 'materially adverse,' a
> change in working conditions must be more disruptive than a mere
> inconvenience or an alteration of job responsibilities." . . . Such a change
> "might be indicated by a termination of employment, a demotion
> evidenced by a decrease in wage or salary, a less distinguished title, a
> material loss of benefits, significantly diminished material responsibilities,
> or other indices ... unique to a particular situation."

Weeks v. New York State (Div. of Parole), 273 F.3d 76, 85 (2d Cir. 2001), abrogated on

other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-114 (2002)

(quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

Mody did not suffer a decrease in "wages, retirement credits, benefits, or

overtime opportunities" as a result of any of the actions above.  Fairbrother v. Morrison,

412 F.3d 39, 56 (2d Cir. 2005).  However, "adverse employment actions are not limited to 'pecuniary emoluments,'" Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002), so the court will nevertheless consider each action individually.  The court finds that McDonald's negative critique of Mody, micromanaging and scrutinizing Mody's conduct, and any failure to investigate Mody's claims did not materially change the terms and conditions of his employment.  See, e.g., Fairbrother, 412 F.3d at 56-57 (holding that a negative performance appraisal was not itself an adverse employment action).

However, a change in job responsibilities can constitute an adverse employment action where it substantially diminishes an employee's material responsibilities.  See Treglia, 313 F.3d at 717-18, 720 (holding that a police officer who was removed from enforcement duties and confined to desk duty, among other actions, had established an adverse employment action); cf. Fairbrother, 412 F.3d at 56 (holding that an employee who was transferred to a different unit without a material change in duties had not suffered an adverse employment action).  Mody has proffered evidence that he was removed from leadership of a project whose technology he had helped invent and assigned to solicit funding on the same program, a job he testified was demeaning for someone in his professional position.  Viewing the evidence in a light favorable to the plaintiff, the court finds a genuine issue of material fact as to whether the change of duties resulting from removal from the Magic Panel project leadership and assignment to funding work substantially diminished Mody's material employment responsibilities, thereby constituting an adverse employment action.

23

The only other prong of the prima facie test that is in dispute is the fourth, the inference of discriminatory intent.  Although it is unclear to the court precisely when Jay Hill assumed the role of project leader on the Magic Panel project, the record contains some evidence that he was appointed shortly before December 2002.  See Fuselier Dep. at 59-60, Plf.'s App. Ex. 4 [Doc. No. 43-3].  Pugliese first asked Mody to solicit funds from the DOE for the Magic Panel project on December 10, 2002.  See Def.'s App. Ex. 9.  Mody filed his formal complaint of discrimination in July 2002, but on October 29, 2002 he again alleged in an email to McDonald and Lavalle that he was being discriminated against.  Although he did not mention race or age in the October email, he was at least arguably referencing his more detailed July 2002 complaint.  Thus, Mody has proffered evidence that a period of time of about one month and twelve days, or possibly even less than a month, elapsed between his race and age discrimination complaints and the change of employment duties.  This establishes the temporal proximity necessary to draw the minimal inference of retaliatory intent necessary for a prima facie case.  See, e.g., Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) (holding that a time lapse of "a few months" between protected complaints and adverse employment action was sufficient to establish the causal link required for a prima facie retaliation case).

GE has, in turn, articulated legitimate, non-retaliatory reasons for its decisions to change Mody's duties.  It has proffered evidence that the appointment of Jay Hill to lead the Magic Panel project was consistent with a common GEIS practice of assigning a manager to lead a project that another employee had developed.  It has also proffered evidence that Mody's knowledge of the product he had developed made him uniquely

24

positioned to promote it to the DOE.  Mody, by his testimony, has questioned the credibility of these explanations.  He has testified that, during one of many discussions in which he was asking about a promotion prior to the email from Pugliese, McDonald "told me that he is getting exasperated with my insisting on talking about my promotion" and "said I know you and there are things I could ask you to do that if I asked you to do them, you would just quit."  Mody Dep. at 144, Plf.'s App. Ex. 1 [Doc. No. 43-3].  From these comments and their context, a reasonable trier of fact could conclude that McDonald changed Mody's duties in order to retaliate for his repeated demand for promotions.  More specifically, a reasonable trier of fact could infer that the change in duties was intended as retaliation for allegations of race and age discrimination.  In reaching this conclusion, the court takes particular note of the email that Mody wrote on October 29, 2002, less than two months prior to his change in duties, complaining that discrimination was the reason that other employees were being promoted over him.  Thus, the court holds that the claim that Mody's removal from leadership of the Magic Panel project and assignment to contact the DOE constituted unlawful retaliation for his discrimination complaints (part of Counts IV, VI, VII, and VIII) survives summary judgment.

     With respect to the FMLA retaliation claim (Count XII), Mody has not pled any claim of FMLA retaliation in the form of reassignment or change of duties, and the only FMLA leave alleged in his complaint was that beginning on December 17.  Moreover, although he has presented evidence that he made McDonald generally aware of his medical condition and that he sometimes missed days or hours of work in the Fall of 2002, he has not brought to the court's attention any evidence that he actually took

FMLA leave prior to the change in his duties in December 2002.  Therefore, even if

Mody were asserting a claim for FMLA retaliation based upon the changes in his duties

in December 2002, he has not made out a prima facie case as to that claim.  The court

thus grants GE's motion for summary judgment as to any FMLA retaliation claim

premised on a change in employment duties short of termination, and denies Mody's

motion for summary judgment on Count XII in its entirety.

### C.  Promissory Estoppel (Count IX)

Promissory estoppel requires four elements:

(1) "[T]he existence of a clear and definite promise"

(2) "which a promisor should reasonably expect to induce action or
forebearance on the part of the promisee or a third person"

(3) "which does induce such action or forbearance"

(4) "[I]njustice can be avoided only by enforcement of the promise."

D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213 (1987)

(quoting Restatement (Second) Contracts § 90 (1973)).  GE argues that none of these

elements can be established by the evidence in this case.

The parties dispute whether Indra Purkayastha, the GE executive who hired

Mody, made a clear and definite promise regarding future promotions.  A "promise must

reflect a present intent to commit as distinguished from a mere statement of intent to

contract in the future."  Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 105

(2003) (citing D'Ulisse-Cupo, 202 Conn. at 214-15).  "'[A] mere expression of intention,

hope, desire, or opinion, which shows no real commitment, cannot be expected to

induce reliance,'. . . and, therefore, is not sufficiently promissory."  Id. (citing  3 A.

Corbin, Contracts § 8.9, pp. 29-30 (Rev. Ed. 1996)).  "The requirements of clarity and definiteness are the determinative factors in deciding whether the statements are indeed expressions of commitment as opposed to expressions of intention, hope, desire or opinion."  Id. (citing D'Ulisse-Cupo, 202 Conn. at 214-15).  Additionally, "statements made to an employee must be examined in the circumstances in which they were expressed" for purposes of evaluating a promissory estoppel claim. Torosyan v. Boehringer Ingelheim Pharmaceuticals, 234 Conn. 1, 17 n.6 (1995).

Although the question of whether a statement is promissory is generally a question of fact, Ruffalo v. CUC Intern., Inc., 989 F.Supp. 430 (D.Conn. 1997) (quoting Torosyan, 234 Conn.at 17 n.6), even if Mody's account of Purkayastha's statement were true, this language could not establish that Purkayastha had made a clear and definite promise.  Purkayastha's statements were "neither sufficiently promissory nor sufficiently definite to support contractual liability."  D'Ulisse-Cupo, 202 Conn. at 214. They were generalizations about GE's general promotion practices, not a clear and definite promise.  In light of the fact that Purkayastha made these statements at the time of hiring, a reasonable jury might infer that he intended to encourage Mody to join GE.  Even assuming that he had such intent, however, Purkayastha made no statement of present intent to promote Mody at any particular time in the future.  Mody has not presented sufficient evidence to permit his promissory estoppel claim to survive summary judgment.

**D. Negligent Misrepresentation (Count X)**

27

Mody also pursues a claim of negligent misrepresentation, based upon the same statements by Purkayastha.  Connecticut has adopted the definition of negligent misrepresentation from section 552 of the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Glazer v. Dress Barn, Inc., 274 Conn. 33, 73 (2005) (quoting Updike, Kelly & Spellacy, P.C. v. Beckett, 269 Conn. 613, 643 (2004)); see Williams Ford, Inc. v. Hartford Courant Co., 657 A.2d 212, 220 (Conn. 1995) (quoting Restatement).  "Accordingly, an action for negligent misrepresentation requires the plaintiffs in the present case to prove that [the defendant] made a misrepresentation of fact, that [the defendant] knew or should have known that it was false, that the plaintiff reasonably relied upon the misrepresentation, and that the plaintiff[] suffered pecuniary harm as a result thereof." Glazer, 274 Conn. at 73.

Mody has not drawn the court's attention to any evidence whatsoever proving that Purkayastha's statements were false when made.  See Plf.'s Mem. Opp. Def.'s Mot. Summ. J. at 34-35 [Doc. No. 50].  He has not provided any evidence that, at the time he was hired, the time to promotions at GE was in fact "long" for individuals whom GE realized had both good technical skills and good people skills.  The court therefore grants the defendant's motion for summary judgment on the claim of negligent misrepresentation.

### E.  Negligent Infliction of Emotional Distress (Count XI)

28

Moody next alleges that GE negligently inflicted emotional distress upon him. This claim requires a showing that: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).  The defendant correctly argues that Connecticut recognizes this cause of action in the employment context only where it is based on a defendant's conduct during the termination process. Perodeau v. City of Hartford, 259 Conn. 729 (2002).  Moreover, "[t]he mere termination of employment, even where it is wrongful, is [ ] not, by itself, enough to sustain a claim for negligent infliction of emotional distress.  The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v. United Technologies Corp., 243 Conn. 66, 88-89 (1997) (internal citation and quotation marks omitted).  Rather,

> in order to sustain a claim of negligent infliction of emotional distress in this setting, [the plaintiff] must allege that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner." . . . [I]n evaluating the plaintiff's claims, the Court first must determine whether he has presented evidence (1) that his employer engaged in unreasonable conduct, that is, conduct which was "inconsiderate" or intended to humiliate or embarrass the employee and, (2) that the conduct was engaged in during the course of the employment termination process.

Schug v. Pyne-Davidson Co., No. 3:99CV1493(CFD), 2001 U.S. Dist. LEXIS 21246, at *24-25 (D. Conn. Dec. 10, 2001) (internal citations omitted).

The court finds no genuine issue of material fact as to whether McDonald and the other GE supervisors and human resource managers involved in Mody's

termination discharged him in a manner sufficiently "inconsiderate, humiliating, or embarrassing" to support a claim of negligent infliction of emotional distress.  The court does not find any evidence that those supervisors involved in Mody's termination behaved inconsiderately or intended to embarrass or humiliate him in the course of terminating him.  The Connecticut Supreme Court has held that even removing an employee from an employer's premises with a security escort does not rise to the level of unreasonable conduct, <u>Parsons</u>, 243 Conn. at 89.  Here, GE terminated Mody by letter.  The court grants summary judgment to GE on this claim.

**CONCLUSION**

For the foregoing reasons, the defendant's Motion for Summary Judgment [**Doc. No. 42**] is GRANTED in part and DENIED in part.  It is granted in part as follows:

•   for the defendant on Count I (ADEA discrimination), Count II (Title VII discrimination), Count III (§ 1981 discrimination), Count V (CFEPA discrimination), Count IX (promissory estoppel), and Count X (negligent misrepresentation), and Count XXI (negligent infliction of emotional distress);

•   in PART for the defendant on Count IV (§ 1981 retaliation), Count VI (Title VII retaliation), Count VII (ADEA retaliation), Count VIII (CFEPA retaliation), and Count XII (FMLA retaliation), insofar as the plaintiff premises these claims on the following actions by supervisors: failure to promote, "an immediate scathing assessment just after an excellent review a few weeks earlier, micro-managing and scrutinizing conduct which pre-complaint had never been an issue," and "failing to investigate or address any of his complaints,"  Plf.'s Mem. Opp. Def.'s Mot. Summ. J. at 30 [Doc. No. 50], and in further PART on Count XII (FMLA retaliation) insofar as the plaintiff may premise that count on GE's actions in removing him from management of the "Magic Panel" project and/or assigning demeaning work.

The defendant's Motion for Summary Judgment is denied in all other respects.  The plaintiff's partial Motion for Summary Judgment on Count XII [**Doc. No. 43**] is DENIED.

Thus, the remaining claims in this case :

- part of Count IV (§ 1981 retaliation), of Count VI (Title VII retaliation), of Count VII (ADEA retaliation), and of Count VIII (CFEPA retaliation), insofar as these counts allege retaliatory termination, removal of Mody from management of the "Magic Panel" project, and assignment to demeaning work.

- Count XII (FMLA retaliation), insofar as that count alleges retaliatory termination.

As per its previous ruling on Mody's motion to seal parts 2 and 3 to his appendix of exhibits [Doc. No. 47], the court intends to unseal any pages of the sealed documents on which it has relied in this ruling.  The parties are hereby ordered to file, within ten days, versions of these documents from which they have redacted confidential identifying information as to employees other than Mody.  Those documents will then be made part of the record.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of February, 2006.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge