UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEMANT K. MODY, PhD, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-04-cv-358 (JCH) |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | |
| Defendant | : | |
| | : | April 26, 2006 |

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION OF SUMMARY
JUDGMENT RULING AND TO UNSEAL EXHIBITS 64-67 [Doc. No. 64]**

**I. INTRODUCTION**

The plaintiff, Hemant K. Mody, PhD, moves for reconsideration of the court's

February 21, 2006 ruling granting in part and denying in part defendant General Electric

Company's (GE's) motion for summary judgment.  In particular, Mody moves the court

for reconsideration of its decision to grant summary judgment to GE on Counts XI

(promissory estoppel), X (negligent misrepresentation), XI (negligent infliction of

emotional distress), and partial summary judgment to GE on Counts IV (42 U.S.C. §

1981 retaliation), VI (Title VII retaliation), VII (Age Discrimination in Employment Act

retaliation), VIII (Connecticut Fair Employment Practices Act retaliation) and XII (Family

Medical Leave Act retaliation).  He also moves the court to unseal certain exhibits.

The court assumes the reader's familiarity with its summary judgment ruling,

Mody v. General Elec. Co., No. Civ.A. 304CV358JCH, 2006 WL 413439 (D.Conn. Feb.

21, 2006) (slip op.).

## II. STANDARD OF REVIEW

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790).  The standard for granting a motion for reconsideration is strict.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (internal citations omitted).  "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." SPGGC, Inc. v. Blumenthal, 408 F.Supp.2d 87, 91 (D.Conn. 2006) (internal citation and quotation marks omitted).  "It is also not appropriate to use a motion to reconsider solely to re-litigate an issue already decided." Id.  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257.

## III.    DISCUSSION

### A.    Promissory Estoppel

Mody's promissory estoppel claim was based on his deposition testimony that GE executive Indra Purkayastha told him the following at the time of Mody's hiring:

that at GE the time to promotions is not very long once they recognize that you meet a certain criteria.

And that criteria according to him was that you should have good technical skills and good people skills.  And that if you did well on these two axes the promotion rate is very fast.

2

Mody Dep. at 81, Plf.'s App. Ex. 1 [Doc. No. 43-3].  Purkayastha testified at his deposition that he did not remember precisely what he said to Mody with regard to his potential career at General Electric, but that his "standard speech to anybody [he] recruit[s] for GE" was, "Fundamentally, GE is a performance-driven company, and if you show, deliver results, you'll be able to move up in the company."  Purkayastha Dep. at 15, Plf.'s App. Ex.2 [Doc. No. 43-3].  Purkayastha testified that he gave Mody no time frame as to when promotions might take place.  Id.

Mody argues, first, that the court's holding that Mr. Purkayastha's statements were "neither sufficiently promissory nor sufficiently definite to support contractual liability," D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 214 (1987), shows that it overlooked the Connecticut Supreme Court's decision in Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96 (2003).  Stewart held that "[a]lthough the promise must be clear and definite, it need not be the equivalent of an offer to enter into the contract because 'the prerequisite for . . . [a]pplication [of the doctrine of promissory estoppel] is a promise and not a bargain and not an offer."  Id. at 105 (internal citation omitted).

The court did not overlook Stewart.  Rather, it applied the promissory standard as that standard was stated in Stewart.  In arguing that it applied the formal contract standard rather than the promissory estoppel standard, Mody focuses on the court's use of the quote from D'Ulisse-Cupo, reprinted above.  Although the use of this quote may have unintentionally conveyed the impression that the court was applying a traditional contract standard rather than the promissory estoppel standard, the court's

3

analysis in the summary judgment ruling shows that its decision to grant summary judgment on the promissory estoppel claim was not based on any lack of consideration or lack of evidence of an offer to enter into a contract, but rather on the lack of a clear and definite promise, as required for promissory estoppel.  See Stewart, 267 Conn. at 104-06.

Turning to the cases that Mody has cited in his motion for reconsideration in support of the argument that Purkayastha's statements were sufficiently definite to support promissory estoppel, he cited only one of them, Stewart, in support of the same argument in his memorandum in opposition to the defendant's motion for summary judgment, even though all of the cases had been decided prior to that earlier memorandum.  The court will not consider the cases that the plaintiff cited for the first time on the motion for reconsideration.  See, e.g., SPGGC, 408 F.Supp.2d at 91. Moreover, the court did not overlook any of the pertinent facts of Stewart in reaching its decision to grant summary judgment to GE on the promissory estoppel claim.

Mody argues, further, that, "since the question of whether a statement is promissory is generally a question of fact, it should be decided by the jury."  Plf.'s Mem. Supp. Mot. Reconsideration at 6 (citing Ruffalo v. CUC Intern., Inc., 989 F.Supp. 430 (D.Conn. 1997)) [Doc. No. 64].  Mody did not raise this issue in his memorandum in opposition to the defendant's motion for summary judgment.  Indeed, he conceded in that memorandum that "There Are No Material Issues of Fact With Regard to Plaintiff's Claim of Promissory Estoppel Based On Defendant's Promise."  Plf.'s Mem. Opp. Def.'s Mot. Summ. J. at 32 [Doc. No. 50].  Therefore, the argument that the promissory nature of the statement is a question of fact is a new, alternative argument that is

4

inappropriately raised on a motion for reconsideration.  See SPGGC, 408 F.Supp.2d at

91.  However, the court did not overlook the Ruffalo decision.  In its ruling on Mody's

motion for summary judgment, the court recognized that "the question of whether a

statement is promissory is generally a question of fact," Mody v. General Elec. Co., No.

Civ.A. 304CV358JCH, 2006 WL 413439, at *13 (D.Conn. Feb. 21, 2006) (slip op.)

(citing Ruffalo v. CUC Intern., Inc., 989 F.Supp. 430 (D.Conn.1997)), but even viewing

the facts in a light favorable to Mody, the court found insufficient evidence on which a

reasonable jury could find a clear and definite promise.

       For the foregoing reasons, the court finds that none of the requirements for

reconsideration have been satisfied with respect to Count IX.  It denies the plaintiff's

motion to reconsider the court's previous ruling granting summary judgment to GE on

Count IX.

            **B.     Negligent Misrepresentation**

       Mody's negligent misrepresentation claim, in Count X, is based on the same

statements as his promissory estoppel claim.  Mody now argues that, in holding that the

plaintiff presented no evidence that the statements Mr. Purkayastha made were false at

the time made, "the Court overlooked testimony by Mr. Purkaystha [sic] and others

which clearly shows that he knew the statements he made to Dr. Mody were false at the

time he made them."  Plf.'s Mem. Supp. Mot. Reconsideration at 6 [Doc. No. 64].

       In his memorandum in opposition to GE's motion for summary judgment,

however, Dr. Mody did not draw the court's attention to any specific evidence on the

record that would support a finding that the statements were false when made.  At the

summary judgment stage, the nonmoving party must "go beyond the pleadings and by

[his] own affidavits, or by the "depositions, answers to interrogatories, and admissions

on file," designate "specific facts showing that there is a genuine issue for trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Mody failed to designate any

specific facts that would show a genuine issue for trial on the negligent

misrepresentation claim.  The court will not consider new argument on the motion for

reconsideration, because it finds no intervening change in the controlling law, new

evidence, clear error of law, nor manifest injustice.[1]  See supra, Part II.  The court

denies the plaintiff's motion for reconsideration with respect to the claim of negligent

misrepresentation.

## C.    Negligent Infliction of Emotional Distress

Next, Mody argues that the court overlooked certain case law in granting

summary judgment to GE on the claim of negligent infliction of emotional distress.

---

[1]Moreover, even if the court were to consider the evidence to which Mody draws its attention in his motion for reconsideration, it would not change its summary judgment ruling.  Mody argues that this evidence shows that Purkayastha knew that the statements that are the subject of the negligent misrepresentation claims, see supra Part III.A, were false at the time he made them.  The court disagrees. The deposition testimony that Mody cites in the relevant section of his memorandum in support of his motion for reconsideration addresses only one type of promotion:  the promotion to Executive Band ("E-Band").  See Purkayastha Dep. at 10, Plf.'s App. Ex. 2 [Doc. No. 43-3]; Lavalle Dep. at 61, Plf.'s App. Ex. 6 [Doc. No. 43-3].  Even though Mody was hired for a position in the band level just below E-Band, Purkayastha's statements at the time of his hiring dealt with promotions in a very general sense.  Mody does not specifically dispute that GE employees may receive promotions from one position to another within the same band, in addition to promotions from one band to the next.  See, e.g., Purkayastha Dep. at 5-8 (describing the various positions Purkayastha held at GE).  He points to no evidence suggesting that Purkayastha promised him he would be promoted to E-Band in particular, nor to any evidence suggesting that Purkayastha knew or should have known that his representation regarding promotions was false with respect to promotions in general.

The only other evidence that Mody cites for the proposition that Purkayastha knew that his statements were false when made appears to be a set of slides for a GE Industrial Systems presentation on a business model for supporting "both technical development and career advancement."  Plf.'s App. Ex. 17 [Doc. No. 43-3].  In his memoranda, Mody draws the court's attention to no evidence regarding who prepared these slides, when they were prepared, or whether Purkayastha saw them.  This court cannot consider this exhibit on summary judgment because it would not be admissible at trial.  See D.Conn.L.R.Civ.P. 56(a)(3) (2005).  Moreover, this exhibit does not permit a reasonable inference that Purkayastha had reason to believe he was making false statements to Mody at the time of his hiring.

In the employment context, liability for negligent infliction of emotional distress cannot arise from behavior that is "part of an ongoing employment relationship." Perodeau v. City of Hartford, 259 Conn. 729, 762 (2002).  It can arise only from conduct occurring in the "termination process."  Id. at 763.  Moreover, "a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction  of  emotional  distress."  Id. at 751.  Liability for negligent infliction of emotional distress in the employment context requires that "the defendant's conduct during the termination process was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm."  Id. at 751 (internal citation and quotation marks omitted).  It requires that the actual discharge was done in an "inconsiderate, humiliating or embarrassing manner."  Worster v. Carlson Wagonlit Travel, Inc., No. 3:02 CV 167 (EBB), 2005 WL 1595596, at *4 (D.Conn. July 6, 2005) (quoting Yurevich v. Sikorsky Aircraft Div., 51 F.Supp.2d 144, 153 (D.Conn.1999) and citing Sizer v. Connecticut Post, No. CV20398342, 2004 WL 114457, at *4 (Conn.Super. Jan.9, 2004); Pavliscak v. Bridgeport Hosp., 48 Conn.App. 580, 598, cert. denied, 245 Conn. 911 (1998)).

Mody argues in support of his motion for reconsideration that this court viewed the phrase "termination process" too narrowly.  The Connecticut Supreme Court has not specifically ruled on the temporal boundaries of the termination process.  However, the reasoning in Perodeau makes clear that this process does not begin, as Mody would have this court find, at the action that causes the employer-employee relationship to "deteriorate."  Plf.'s Mem. Supp. Mot. Reconsideration at 9 [Doc. No. 64].  The

7

Connecticut Supreme Court's based its ruling in <u>Perodeau</u> that negligent infliction of emotional distress actions may not be based on conduct occurring in an ongoing employment relationship on two policy considerations:  (1) the concern that the threat of negligent infliction of emotional distress claims would chill competitive and productive behavior in the workplace; (2) the goal of preventing a flood of spurious claims that could arise "in light of the inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress" and that would impose great social cost.  <u>Perodeau</u>, 259 Conn. at 757-59.  Interpreting the phrase "termination process" to begin when an employer and employee first encounter a conflict with each other would cut against these policy objectives and render the <u>Perodeau</u> court's ruling that negligent infliction of emotional distress claims are not permitted in an ongoing employment relationship virtually meaningless.  In this case, the earliest actions that could possibly be considered part of the termination process, as distinct from other conflicts arising in the course of the employment relationship, were Lavalle's emails discussing plans to terminate Mody.  <u>See</u> Plf.'s App. Ex. 41 & 44 [Doc. No. 43-3].

Mody argues that the court, in ruling on GE's motion for summary judgment, considered the "termination process" as including only the act of mailing the termination letter.  The court disagrees.  After setting forth the standard for negligent infliction of emotional distress in the employment context, it held:

> The court finds no genuine issue of material fact as to whether McDonald and the other GE supervisors and human resource managers involved in Mody's termination discharged him in a manner sufficiently "inconsiderate, humiliating, or embarrassing" to support a claim of negligent infliction of emotional distress.  The court does not find any evidence that those supervisors involved in Mody's termination behaved inconsiderately or intended to embarrass or humiliate him in the course of terminating him.

8

<u>Mody</u>, 2006 WL 413439, at *15.  Only thereafter did it note, more specifically, that the termination letter McDonald sent to Mody did not rise to the level of unreasonable conduct.  The letter was unquestionably an important fact relating to the "manner of the discharge," <u>Storm v. ITW Insert Molded Prods.</u>, 400 F.Supp.2d 443, 449 (D.Conn. 2005), but the court's reference to the other GE supervisors and human resource managers shows that it considered the totality of GE's conduct "in the course of" Mody's termination.

Moreover, the court notes that none of the activities that occurred in the termination period could reasonably give rise to an inference that the plaintiff's "actual discharge was done in an inconsiderate, humiliating or embarrassing manner," <u>Copeland</u>, 285 F.Supp.2d at 153, such that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm."  <u>Perodeau</u>, 259 Conn. at 751 (internal citation and quotation marks omitted).

Mody argues in his motion for reconsideration that "there is sufficient evidence to show GE pressured Dr. Mody by requiring him to perform menial tasks, stripped him of his responsibilities relating to his inventions or projects he initiated, and demanded he take direction from his subordinates."  This argument relies on this court's ruling in <u>Copeland v. Home & Community Health Svcs.. Inc.</u>, 285 F.Supp.2d 144 (D.Conn. 2003).  In <u>Copeland</u>, this court denied a <u>motion to dismiss</u> a negligent infliction of emotional distress claim, in part because the plaintiff had alleged that her employer pressured her to return to work and threatened to fire her if she did not do so, even

though the employer knew that the plaintiff was taking time off from work to recover from severe anxiety and panic attacks.   Mody argues that his employer similarly knew about his medical condition.  However, his situation is distinguished from that of Copeland in several ways.

    First, the holding in Copeland relied in part on the fact that the employer knew the employee was suffering from an anxiety disorder in particular, and not just any medical problem.  The anxiety disorder was the source of Copeland's "susceptibility" to her employer's pressure.  See Copeland, 285 F.Supp.2d at 153.  The employer's knowledge of the employee's mental state is relevant to the negligent infliction of emotional distress inquiry because the negligent infliction standard requires that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if caused, might result in illness or bodily harm."  Perodeau, 259 Conn. at 751 (internal citation and quotation marks omitted). Chen, similar to Copeland, found an employer's conduct unreasonable when viewed in light of the employer's awareness of the plaintiff's "fragile emotional state," where the plaintiff had taken disability leave for severe depression, among other problems.  In contrast, GE had only general knowledge that Mody suffered from a chronic physical ailment that sometimes required him to be absent from work, and that he had previously taken FMLA leave.  His supervisors did not pressure him to return to work while he was on FMLA leave.  On the day of his return from FMLA leave, McDonald did ask him to perform work that was at least arguably menial for someone in his professional position and threaten him with termination if he did not follow this instruction.  However, Mody pointed to no evidence that his employer should have

realized that this conduct involved an unreasonable risk of causing emotional distress of a sort that might result in illness or bodily harm.  Although Mody may argue that it reasonably should have expected he would be angry upon being ordered to perform administrative funding work that he had previously been unwilling to perform, there is no evidence that GE should have known he would be at risk for illness or bodily harm as a result of such distress.

Moreover, although Mody left work on the afternoon of February 24 and did not return thereafter, he never told GE that this final period of absence from work related to any medical problems.  He left a note saying he was taking a half-day vacation and thereafter simply stopped showing up for work.  In light of these facts, McDonald's conduct in ordering Mody to perform administrative funding work and then sending Mody several letters during Mody's unexplained absence from work – one suspending him for insubordination, the next threatening termination if he continued not to show up to work, and the third terminating his employment – was not conduct that GE should have realized was creating an unreasonable risk of causing Mody emotional distress severe enough to result in illness or bodily harm.  See Perodeau, 259 Conn. at 751.

Mody also draws the court's attention to a supervisor's remark, "there are things I can ask you to do that if I asked you to do them, you would just quit."  Plf.'s Mem. Supp. Mot. Reconsideration at 10 [Doc. No. 64].  However, the record contains no evidence suggesting that this remark was made during the termination process.  Rather, Mody testified that McDonald made this remark before December 10, 2002, when junior staff member Heather Pugliese first emailed Mody to ask him to take the lead on soliciting project funding from the Department of Energy.  See Mody Dep. at 143-50, Plf.'s App.

11

Ex. 1 [Doc. No. 43-3].  Moreover, this remark, even viewed in concert with the conduct discussed above, also fails to rise to the level of conduct that GE should have realized "involved an unreasonable risk of causing emotional distress and that distress, if caused, might result in illness or bodily harm." Perodeau, 259 Conn. at 751 (internal citation and quotation marks omitted).

For these reasons, the court found insufficient evidence to support a claim of negligent infliction of emotional distress, and it did not overlook its ruling in Copeland. The court has also reviewed the other cases that the plaintiff has cited in his motion for reconsideration and finds none that would suggest that it has made a clear error or perpetrated a manifest injustice by granting summary judgment to GE on the negligent infliction claim.   Mody has not met any of the requirements for reconsideration of the ruling on negligent infliction of emotional distress.  The court denies the motion for reconsideration with respect to this claim.

### D.      Retaliation Claims Premised on Certain Adverse Employment Actions

Next, Mody asks the court to reconsider its holding that certain conduct by GE did not rise to the level of "adverse employment actions."  This argument concerns the following conduct:  "an immediate scathing assessment just after an excellent review a few weeks earlier, micro-managing and scrutinizing conduct which pre-complaint had never been an issue," and "failing to investigate or address any of his complaints." Mody, 2006 WL 413439, at *15 (quoting Plf.'s Mem. Opp. Def.'s Mot. Summ. J. at 30 [Doc. No. 50]).  The court found that these were not adverse employment actions for

purposes of the retaliation claims, although it found that Mody's termination and the

change in his employment duties could be considered adverse employment actions.

Mody argues that, by considering each of the actions mentioned above in isolation, the

court "ignored the overwhelming evidence of a management-sanctioned course of

retaliatory harassment commencing immediately after Dr. Mody's July complaint of

discrimination." Plf.'s Mem. Supp. Mot. Reconsideration at 10 [Doc. No. 64].  He argues

that the actions may be combined to form an adverse employment action.  Id. at 11

(citing Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002); Bernheim v. Litt, 79

F.3d 318, 324-26 (2d Cir. 1996)).   He specifically argues that GE may be liable for

"retaliatory harassment inflicted by co-workers" if it knew about it and failed to stop it.

Id. (citing Snell v. Suffolk Cty., 782 F.2d 1094, 1104 (2d Cir. 1986); Richardson v. NY

State Dep't of Correctional Svc., 180 F.3d 426, 446-47 (2d Cir. 1999))

      The court finds no error in its previous statement of the legal standard for an

adverse employment action:

> An adverse employment action is a materially adverse change in the
> terms and conditions of employment . . . . To be " 'materially adverse,' a
> change in working conditions must be more disruptive than a mere
> inconvenience or an alteration of job responsibilities." . . . Such a change
> "might be indicated by a termination of employment, a demotion
> evidenced by a decrease in wage or salary, a less distinguished title, a
> material loss of benefits, significantly diminished material responsibilities,
> or other indices ... unique to a particular situation." _____

Id. at *11 (quoting Weeks v. New York State (Div. of Parole), 273 F.3d 76, 85 (2d Cir.

2001), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 108-114 (2002). . . . "[A]dverse employment actions are not limited to pecuniary

emoluments." Id. (quoting Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002)).

Although evidence of McDonald's negative critique, micromanagement and scrutiny of Mody's conduct, and GE's failure to investigate Mody's claims may ultimately prove relevant to the intent element of the surviving retaliation claims, the court finds no error in its holding that they do not amount to additional adverse employment actions when considered under the Second Circuit standard above.  Even if considered in the aggregate, see Plf.'s Mem. Supp. Mot. Reconsideration at 10-11, "McDonald's negative critique of Mody, micromanaging and scrutinizing Mody's conduct, and any failure to investigate Mody's claims did not materially change the terms and conditions of his employment," Mody, 2006 WL 413439, at *11.

With respect to Mody's specific argument on the failure to investigate claim, the court never held that GE lacked the responsibility to investigate or abate retaliatory actions by its employees.  Nor did it hold that a company's failure to investigate complaints by employees could never amount to an adverse employment action. Rather, on the basis of the particular evidence on the instant record, it held that any failure by GE to investigate Mody's claims "did not materially change the terms and conditions of his employment." Mody, 2006 WL 413439, at *11.  In contrast, where the court found evidence of conduct by co-workers and supervisors that may have materially changed the conditions of employment, specifically, the change in Mody's job responsibilities and his termination, the court denied GE's motion for summary judgment.

14

In conclusion, with respect to its ruling on the retaliation claims, the court finds no intervening change in the controlling law, new evidence, clear error of law, nor manifest injustice.[2]  The court therefore denies Mody's motion for reconsideration of this portion of the summary judgment ruling.

### E.      Plaintiff's Motion to Unseal Documents

Mody moves the court to unseal Exhibits 64, 65, 66, and 67 of the plaintiff's Appendix of Exhibits, with the names of Mody's co-workers redacted.  GE does not object to this request.  Def.'s Mem. Opp. Plf.'s Mot. Reconsideration at 7 [Doc. No. 69]. Therefore, the court grants the plaintiff's motion in this respect.  Mody is ordered by May 15, 2006 to submit to GE, for its review, a copy of exhibits 64-67 from which the names of Mody's co-workers have been redacted.  Upon GE's approval of the redactions, the parties may then file the redacted version of these exhibits with the court, no later than May 31, 2006.

## IV.    CONCLUSION

The plaintiff's motion for reconsideration does not establish that the court's summary judgment ruling contained clear errors of law, nor that reconsideration would be required to prevent manifest injustice, and it contains a number of citations and

---

[2]The court also notes that, in the pertinent section of his memorandum in opposition to the defendant's summary judgment motion, Mody did not cite any of the cases he now cites in support of this argument in the motion for reconsideration.  See Plf.'s Mem. Opp. Def.'s Mot. Summ. J. at 30 [Doc. No. 50].

arguments that the plaintiff could have included in his memorandum in opposition to the defendant's motion for summary judgment.

For the foregoing reasons, the court GRANTS in part and DENIES in part the plaintiff's pending motions [**Doc. No. 64**].  It DENIES the plaintiff's motion for reconsideration and GRANTS the plaintiff's motion to unseal plaintiff's summary judgment exhibits 64-67, in redacted form and subject to the procedure described <u>supra</u>, in Part III.E.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of April, 2006.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge