# UNITED STATED DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **HEMANT K. MODY, Ph.D.,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:04 CV 0358 (JCH)** |
| | : | |
| **V.** | : | |
| | : | |
| **GENERAL ELECTRIC COMPANY,** | : | |
| | : | **APRIL 28, 2006** |
| **Defendant.** | : | |

## PLAINTIFF'S REQUEST TO CHARGE

The plaintiff respectfully requests that the Court charge the jury as follows:

### *CHARGE TO THE JURY*

Members of the jury, you have listened to and seen the evidence in this case, and you have heard the arguments of counsel. You are now to receive from me the rules of law that lie at the foundation of the various matters here in issue: the rules which, when applied by you, will lead to your ultimate decisions.

It is your duty as citizens and as jurors to deliberate on this case, and to arrive at fair and just decisions based upon the evidence and the law. Sympathy as well as bias have no place in the case and you should conscientiously and definitely avoid any consideration of sympathy or bias as a basis for your decisions. And that applies equally to the plaintiff and to the defendants.

I will first, if I may, direct your attention to certain general principles that will guide your consideration of the matters in this case before discussing the specifics of this case and the law applicable to them. *Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

## *FUNCTION OF THE COURT AND JURY*

First, let me remind you again that you are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and draw your own conclusions as to what the ultimate facts are.

It is my function and indeed my duty to instruct you on the law applicable to this case. You must apply the law, as I give it to you, to the facts you find proved. You are to accept the law from the court, that is from me, considering my charge as a whole, without regard to any claims which have been made by counsel and without regard, also, to any convictions you yourselves may have as to what the law is or what you think the law ought to be. You will then render your verdicts by unanimous votes.

I do not have any preference as to the outcome of this case. I have not meant to convey by facial expression or tone of voice or in any other way at any time during the trial any preference or inclination as to how you should decide the facts, and you should not make any such interpretations. If, in my instructions to you, I refer to one party more than the other, or do anything that in your mind suggests a preference for one side or the other, it is not done on purpose. My task has been to apply the rules of evidence and to instruct you as to the law. It is for you alone to decide on the outcome of this case. *Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

## *EVIDENCE*

At the outset, I should inform you that I am not going to review or marshal the evidence for you. I am sure the evidence is still fresh in your minds, and counsel have just reviewed their factual contentions in their summations. If any comments that I do make about the evidence differ from your own recollection, it is still your recollection that controls, not mine.

2

You must only consider the evidence properly admitted in the case. The evidence consists of the sworn testimony of the witnesses, and all exhibits.

Statements, arguments, and characterizations of counsel, however, including those made in the form of a question to a witness, are not evidence in the case and should not be considered by you in your deliberations on the case. Again, it is your recollection of the evidence that governs.

You must entirely disregard any evidence as to which an objection has been sustained by the court. It is the duty of the lawyers on each side of a case to object when the other side offers testimony or other evidence that the lawyer believes is not properly admissible. You should not show prejudice against a lawyer or her client because the lawyer has made objections. And you must not allow our discussions or my rulings on those technical matters to influence you in any way, for or against either side.

Upon allowing testimony or other evidence to be introduced over the objections of one of the lawyers, the court has not indicated, nor have I meant to indicate, any opinion as to the weight or effect of such testimony or evidence. You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence -- each and every item of it as well as its totality. I have no opinion about the merit of any testimony. If I did, I would be encroaching on your job, and that I will not do.

Anything you have seen or heard outside the courtroom is not evidence in the case, and must be entirely disregarded. But in your consideration of the evidence, you are not limited to the bald statements of witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find proved, such reasonable inferences as you feel are justified in the light of experience. An inference is a deduction or

3

conclusion that reason and common sense lead you to draw from facts that you find have been proved.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

### ***LIMITING INSTRUCTIONS ON EVIDENCE***

You will recall that I have ruled that some testimony and evidence have been allowed for a limited purpose only. Any testimony or evidence which I identified as being received for a limited purpose, you will consider only as it relates to the limited issue for which it was allowed, and you shall not consider such testimony and evidence in finding any other facts as to any other issue.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

### ***STRICKEN EVIDENCE***

Some evidence may have come before you in error, and at the time that occurred, I ordered that evidence stricken and told you that you must disregard it. That evidence is not a part of this case and you may not consider that evidence in reaching your verdict.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

### ***DIRECT AND CIRCUMSTANTIAL EVIDENCE***

As a general rule, there are two types of evidence from which you may find the truth as to the facts of this or any other case: direct and circumstantial evidence. Simply put, direct evidence is the testimony of one who asserts actual knowledge of a fact, for example, an eyewitness. Circumstantial evidence, generally put, is proof of a chain of facts and circumstances that may indicate the existence or non-existence of a fact.

Now, to illustrate the difference between direct and circumstantial evidence, let us assume that the fact in issue in a case is whether it was raining on a particular afternoon. If a witness testified

4

that he or she personally saw it raining that day, then we would say that we had direct evidence of that fact. On the other hand, if a witness testifies that he or she was in a windowless room on that afternoon, but that when the witness came inside, the sky was overcast, and that while the witness was in the room, one person entered with a dripping wet umbrella while another walked in wearing a wet raincoat, we would say that we have circumstantial evidence of the fact that it was raining.

That is a very simple illustration.

Importantly, as a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that, before finding a charge proven, or a fact established, the jury be satisfied of the proof of that charge or fact by the appropriate standard -- a matter I will discuss with you shortly.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

### **WEIGHT OF THE TESTIMONY**

In fulfilling your duty as finders of fact, you as jurors are the sole judges of the credibility of the witnesses and the weight, if any, their testimony deserves. This is also true as to the veracity and weight of the other evidence, including exhibits. There is no magical formula by which one may evaluate testimony. You bring with you to this courtroom all the experience and background of your daily lives. In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you or documents given to you by others. The same tests that you use in your everyday dealings are the tests that you should apply in your deliberations here. You may consider the demeanor of the witness on the stand and any interest he or she may have in the outcome of the case. You may also consider any bias or prejudice for or against any party; the witness' opportunity to observe; any reason for the witness to remember or forget; the inherent probability of his or her

5

story; its consistency or lack of consistency; and its corroboration or lack of corroboration by other credible evidence.

You may decide not to accept a witness' testimony even if it stands uncontradicted and unimpeached. On the other hand, you may find a particular fact established even though it is supported only by the testimony of one witness. In sum, jurors, you alone determine what weight, if any, to give to the evidence presented.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief. Consider each witness' intelligence, motive, state of mind and demeanor while on the stand. Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict and the extent to which, if at all, each witness is either supported or contradicted by other credible evidence in the case.

You may also bear in mind that if you should find that any witness has deliberately testified falsely on any material point, you may take that into consideration in determining whether that witness has testified falsely on other points. Simply because you find that a witness has not testified accurately with respect to one fact, it does not necessarily follow that the witness is wrong on every other point. A witness may honestly be mistaken on one point of testimony yet entirely accurate on others. But if you find that a witness has deliberately lied on any material point, it is only natural that you should be suspicious of the testimony of that witness on all points. Under those circumstances, you are entitled, if you deem it appropriate, to disbelieve the entire testimony of that witness. Whether you disbelieve it or not lies in your sound judgment and sole prerogative.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

### *EXPERT WITNESSES*

We have had in this case the testimony of one or more expert witnesses. Expert witnesses, such as accountants or doctors, are people who, because of their training, education, and experience, have knowledge beyond that of the ordinary person. Because of that expertise in whatever field they happen to be in, expert witnesses are allowed to give their opinions. Ordinarily, a witness cannot give an opinion about anything, but rather is limited to testimony as to the facts in that witness' personal knowledge.

In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in the particular field; the information available to the expert, including the facts the expert had, and the documents or other physical evidence available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the fact, activity and the basis for the opinion.

You should ask yourselves about the methods employed by the expert and the reliability of the result. You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence. Based on all of those things together with your general observation and assessment of the witness, it is then up to you to decide whether or not to accept the opinion. You may believe all, some or none of the testimony of an expert witness. In other words, an expert's testimony is subject to your review like that of any other witness.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

7

## *IMPEACHMENT BY PRIOR INCONSISTENT STATEMENT*

As a general matter, the testimony of a witness may be discredited or impeached by showing that he or she has previously made statements that are inconsistent with his or her present testimony. Generally, the inconsistent statements are admitted into evidence solely for the purpose of shedding light on the witness' credibility. Therefore, should you find that a witness' prior statements are inconsistent with his or her testimony, you may consider such prior statements but only in connection with your evaluation of the credence to be given to the witness' present testimony in court. That is, you may consider such prior inconsistent statements only for the purpose of judging the witness' present testimony in court, and you are not to consider such prior statements for their truth or falsity or for how they bear on the merits of the case. This is the general rule.

There is an exception to this general rule. If you find that a prior inconsistent statement of a witness was given under oath, subject to the penalty of perjury, such as in a deposition, that prior statement may be considered by you, both for its own truth or falsity as well as in your evaluation of the witness' credibility. *Standard Jury Charge of Magistrate Holly B. Fitzsimmons*

## *USE OF DEPOSITION*

While most of the witnesses whose testimony has been presented to you were here to testify in person, the testimony of several witnesses was presented to you by having a transcript read to you of questions asked and answers given by that witness under oath at an earlier time. Testimony that is presented in this manner may be accepted or rejected by you in the same way as the testimony of witnesses who have been physically present in court. Fed.R.Civ.P. 32(a).

8

## *BURDEN OF PROOF -- CIVIL*

In this civil action the plaintiff bears the burden of proving each essential element of his claim by a "preponderance of the evidence."

I wish to point out that the burden of proof in civil cases such as this one differs from the burden of proof in criminal cases. In a criminal case, the burden of proof is proof "beyond a reasonable doubt"; in a civil case, the burden of proof is generally proof "by a preponderance of the evidence." to prove by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence, as when considered and compared with that opposed to it, has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true. This is not necessarily determined by the greater number of witnesses produced by a party, but it means that the evidence on behalf of the party on whom the burden rests must have greater weight in your judgment, that is, greater probative value.

It might be helpful to visualize a pair of scales in equal balance. Imagine that you can put the plaintiff's evidence on one side of the scale and the defendant's on the other. If the scales tip ever so slightly in favor of the plaintiff, the plaintiff's evidence preponderates, and he has sustained her burden of proof. If the scales tip the other way, ever so slightly in favor of the defendant, then obviously the plaintiff has not sustained his burden of proof. Should you feel that the scales are evenly balanced, that neither side's evidence outweighs the other, then the plaintiff has failed to meet the burden of proving his case by a preponderance of the evidence.

The general rule I have just described to you applies to the plaintiff's burden in what we call his case-in-chief: that is, to the plaintiff's claims that a defendant is liable. The same rule applies to

9

claims which a defendant has raised, that is, a defendant has the burden of proving by a preponderance of the evidence any defense he chooses to raise.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

### *BURDEN OF PROOF - AFFIRMATIVE DEFENSE*

The defendant in this case, in addition to denying the claims made by the plaintiff, has affirmatively asserted what are referred to as "affirmative defenses" to the plaintiff's claims. An "affirmative defense" is a defense which if established defeats some or all of plaintiff's claims. The purpose of an affirmative defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003)(citations omitted) Alternatively, a defendant may seek to strengthen its case by asserting an affirmative defense and thereby assuming the burden of proof of certain allegations asserted by the plaintiff. Cabrera v. Jakabovitz, 24 F.3d 372, 382-83 (2d Cir. 1994). I will review these affirmative defenses with you in connection with my discussion of each count of the complaint. The defendant has the burden of proof as to the allegations of any affirmative defenses upon which the defendant relies. The plaintiff does not have the burden to disprove the allegations of the defendant's affirmative defenses. Rather, each party has the burden of proving that party's own claims and no burden to disprove the claims of that party's adversary Luciano v. Olsten Corp., 110 F.3d 210, 218 (2d Cir. 1997).

### *NOTE TAKING*

You were permitted to take notes during the course of the trial. If you took any notes, those notes should be used only as memory aids. You should not give your notes precedence over your independent recollection of the evidence. If you did not take notes, you should rely on your own

independent recollection of the proceedings and should not be influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than the recollection or impression of each juror as to what the testimony may have been.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons*

## **USE OF VERDICT FORM**

To assist you in keeping the different aspects of the case clear, I am going to ask you, as you consider your decisions, to answer a series of very specific questions that will be typed on a form that will be given to you in the jury room.

Each question can be answered simply, and each answer must be unanimous. By dealing with these separate questions, you will be able to apply the rules of law relevant to this case. Of course, you should not conclude from the number or the wording of any question that there is a particular answer you ought to give. Nor should you conclude that you ought to answer all the questions one way or the other way. Give separate consideration to each question and answer it according to the facts you have found and the rules of law that apply to that question.

*Standard Jury Charge of Magistrate Holly B. Fitzsimmons*

### ***THE COMPLAINT***

1.     ***RETALIATION IN VIOLATION OF TITLE VII, ADEA, § 1981 and CFEPA (Counts 4, 6-8)***
Pursuant to Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to fail or refuse to hire or promote or to discharge or demote an individual or to otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race or national origin.

The Age Discrimination in Employment Act or "ADEA" makes it unlawful for an employer

11

to discriminate against an individual in an employment context because of that individual's age. The ADEA prohibits age discrimination against anyone who is forty or older. 42 U.S.C. § 2000e et seq. The purpose of the ADEA is to promote the employment of older persons based upon their ability, rather than age, to prohibit arbitrary age discrimination in employment and to help employees and workers find ways of solving problems arising from the impact of age on employment.

Connecticut state law also prohibits discriminating against a person because of, among other things, his or her age, race or national origin. Section 46a-60(1) of the Connecticut Fair Employment Practices Act provides, in part, that: "It shall be a discriminatory practice in violation of this section: (1) for an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder ..." Conn. Gen. Stat. § 46a-60(a) et seq.

Section 1981 of the Civil Rights Act provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens. This law entitles a person of color to equal opportunity and treatment in employment. Thus, when an employer acts adversely against such a person, defined to include certain national origin claims, the law has been violated. 42 U.S.C. § 1981 (a). Dewitt & Blackmar, Federal Jury Practice & Instructions, § 104.01 (1987 & Supp. 1998).

All of the statutes I have mentioned thus far, both state and federal, prohibit an employer from retaliating against an employee for engaging in protected activity. Plaintiff, Dr. Hemant Mody, claims that he was retaliated against after complaining to Thomas Lavalle and David Foster, among

others that he had been discriminated and retaliated against on the basis of age, race and national origin. Specifically, he claims that GE removed him from work on the "Magic Panel" lighting project he invented, assigned him demeaning work and ultimately discharged him in retaliation for his complaints.

### A. *Retaliation - Elements*

To recover on a claim for retaliation, the plaintiff must prove to you by a preponderance of the evidence the following elements:

1) plaintiff was involved in a protected activity;

2) an adverse employment action occurred; and

3) a causal relationship exists between the protected activity and the adverse action.

Sand, §88-46 Title VII Retaliation Claim, Tomka v. Seiler, 66 F.3d 1295 (2d Cir. 1995).

Plaintiff need not prove that he was in fact discriminated against in order to recover on a claim for unlawful retaliation. In fact, the actions opposed by an employee claiming retaliation do not have to actually be unlawful, the employee must only have a good faith or reasonable belief that the employer is engaging in unlawful activity. Accordingly, an employee who holds a reasonable or good faith belief that an employer's actions violate the law is protected from retaliation. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996); Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1992).

### 1. *Protected Activity*

As to the first element, that plaintiff engaged in protected activity, I instruct you that plaintiff need only show that he was acting under a good faith belief that the activity was covered by the statute. Cosgrove v. Sears, Roebuck and Co., 9 F.3d 1033, 1040 (2d Cir. 1993) (citing Sumner v

United States Postal Service, 899 F.2d 203, 209 (2d. Cir. 1990)). While the protected activity usually takes the form of filing a formal complaint or a lawsuit, making an internal company complaint regarding discrimination is also covered by the statute. Id. at 1040.

Title VII, the ADEA, § 1981 and the CFEPA prohibit employers from taking adverse employment actions because an employee has opposed, alleged discrimination or any practice made unlawful by Title VII, ADEA, FMLA, § 1981 or CFEPA, respectively, or made a charge of discrimination participated in a discrimination investigation. See 704(a) of Title VII; ADEA, 29 U.S.C. §623(d), 7 U.S.C.A. § 1981. This law is designed "to protect a wide range of activity in addition to the filing of a formal complaint." Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990); Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir. 1989). In general, "[t]he term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) It protects a variety of nondescript practices, including verbal and written complaints of discrimination, retaliation or differential treatment. See, e.g., EEOC v. Zellerbach Corp., 720 F.2d 1008, 1014 (9th Cir. 1983); McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001); EEOC v. Ohio Edison, 7 F.3d 541, 543-44 (6th Cir. 1993); Stahl v. Bd. Of Commissioners of Wyandotte County, 244 F.Supp.2d, 1181, 1190 (D.Kan. 2003).

Dr. Mody alleges that he complained to GE on numerous occasions that he believed he was a victim of wrongful treatment on the basis of age, race or national origin including in July 2002, when he in writing complained that GE discriminated against older/minority employees electing instead to promote younger white employees and citing violations of GE's anti discrimination policies. Dr. Mody also alleges that he repeatedly informed GE that he was being retaliated against

14

for registering complaints of discrimination, after each of the following occurrences: his removal from the Magic Lighting Panel Project; assignment of menial tasks by an employee junior to him; continued assignment of the same menial task upon return from his two and a half month medical leave, suspension from the company for refusing to perform the menial task until he consulted with counsel and, in response to his termination.

It is up to you as the fact finder to determine whether or not Dr. Mody made it known to defendant that he felt he was a victim of wrongful treatment on the basis of age, race or national origin or otherwise engaged in protected activity as I have explained that concept to you.

### 2. *Adverse Employment Action*

As to the second element, plaintiff claims that he suffered an adverse employment action in response to his protected activity. In making this determination, you are to determine whether defendant engaged in an action which denies plaintiff a term, condition or privilege of employment. Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996); Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir.), cert denied, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991). An "adverse employment action" is one that, standing alone, actually causes damage, tangible or intangible, to an employee. An employer takes adverse action against an employee if it: (1) takes something of consequence away from the employee, for example by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a customary benefit of the employment relationship, for example, by failing to follow a customary practice of considering the employee for promotion after a particular period of service. An adverse employment action by a supervisor is an action of the employer. Where an employment action works to the disadvantage of an employee who has engaged in a protected

15

activity, this element is satisfied. Ruffino v. State Street Bank & Trust Co., 908 F.Supp. 1019, 1044 (D. Mass. 1995). A reduction in benefits by an employer may be considered an adverse employment action. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997). The termination of employment is, as a matter of law, an adverse employment action.

### 3. *Causal Relationship/Link*

For each of defendant's activities that you have determined to be an adverse employment action, you must determine whether a causal relationship exists between plaintiff's protected activity and the adverse employment actions. If you find that there is a causal link between any of the alleged adverse employment actions and the protected activity in which plaintiff engaged, plaintiff has satisfied the third element of his claim. In making this determination you may consider the temporal proximity of plaintiff engaging in the protected activity and defendant taking the adverse employment activity, hat is the timing of the adverse activity. A showing of an adverse employment action soon after plaintiff engages in a protected activity is indirect proof of a causal connection between the adverse employment action and the protected activity because it is strongly suggestive of retaliation. Tomka v. Seiler, 66 F.3d 1295, 1308 (2d Cir. 1995); Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir. 1986).

### 4. *Legitimate - Nonretaliatory Reason*

In determining the third element, that of a causal connection between the protected activity and the adverse employment action, you may find the defendant has proffered a legitimate, nonretaliatory reason for taking the adverse employment actions against plaintiff. You must decide whether plaintiff has shown that the reasons offered by defendant for taking all of the adverse employment actions against plaintiff are not the only or true reasons such actions were taken, but

16

that the actions were in fact taken, at least in part, in retaliation for plaintiff's protected activity. If you find it more likely than not that defendant's reasons are not believable or are not the real reasons for any of the adverse employment actions, but rather that the adverse actions were motivated or caused at least in part by the fact Dr. Mody engaged in protected activity, then you must return a verdict for the plaintiff. Tomka v. Seiler, 66 F.3d 1295, 1308 (2d Cir. 1995).

In looking at the defendant's explanations for its actions, I instruct you that if you find that the DOE funding assignment on the MAGIC lighting panel project given to Dr. Mody was proof of an attempt to push Dr. Mody out of GE, his refusal to do that work does not constitute a legitimate, non-retaliatory reason for his termination. *Memorandum of Decision (Hall, J.) dated February 21, 2006 at 21*

It is up to you to decide whether plaintiff has proven his claim of retaliation by a preponderance of the evidence. It is plaintiff's burden to show that it is more likely so than not so that his engaging in protected activity was a substantial factor in the decision of defendant to terminate him or otherwise take an adverse employment action. If you find that he has met this burden and that it is more likely so than not so that his protected activity was a substantial factor in the decision of defendant to take an adverse employment action, then your verdict should be for plaintiff. If, on the other hand, you find that it is more likely so than not so that the explanation given by defendant for the adverse employment action was the true reason for the decision it made, and it was not based at least in part upon plaintiff's protected activity, and was not part of a retaliatory plan to push Dr. Mody out of GE, then your verdict should be for defendant. Moreover, if you do not believe the explanation given by defendant was the real or full reason for defendant's decision to take the adverse employment actions, you may find that Plaintiff has proven his claim of

17

retaliation, particularly if you believe that defendant did not put forth honestly the reason for their decision for the adverse employment action. (FEJI §1:665)

The Plaintiff is not required to prove that his protected activity was the only reason for the employer's decision, but if you find that the plaintiff has proven by a preponderance of the evidence that retaliation motivated his employer more probably than not, then you must find for the plaintiff. (FEJI §1:665.10)

Proof of retaliatory intent is critical in this case. Retaliation is intentional if it is done voluntarily, deliberately, and willfully. As I indicated earlier, retaliatory intent may be proven either by direct evidence, such as statements made by a person whose intent is at issue, or by circumstantial evidence from which you can infer a person's intent. Thus, in making a determination as to whether there was intentional retaliation in this case, you may consider any statement made or act done or omitted by a person whose intent is in issue, as well as all other facts and circumstances that indicate his or her state of mind. You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. (FEJI §1:666.)

Finally, I instruct you that if you find for plaintiff on any of his federal retaliation claims under the ADEA, Title VII or § 1981 then, you must also find for plaintiff on his corresponding CFEPA state claim.

### INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FMLA (Count Twelve)

The FMLA provides certain full time employees, of which Dr. Mody is one, with the right to take up to 12 weeks of leave during any one year period, because of a serious health condition. 29 U.S.C. § 2612. Edwards v. Community Enter., Inc., 251 F.Supp.2d 1089, 1104 (D.Conn. 2003). An employee has the right to take such leave on an intermittent basis or on a reduced work schedule

when medically necessary. 29 U.S.C. § 2612 (b)(1).

A serious health condition is defined as an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider 29 U.S.C. § 2611 (11). Kidney disease and its related complications qualifies as a serious health condition under the FMLA. 29 C.F.R. §§ 825.114 (a)(2)(iii-v). Mental illness resulting from stress may also be a serious health condition. 29 C.F.R. § 825.114 (c).

Continuing treatment by a health care provider may include any period of incapacity or treatment for such incapacity due to a chronic serious health condition, a permanent or long term period of incapacity due to a condition for which treatment may be effective, and/or any period of absence for the purpose of receiving multiple treatments 29 U.S.C. § 2611 (11); 29 C.F.R. § 825.114 (a)(2) (ii-v).

An employee who takes FMLA leave has the right to be reinstated to his original position or to a position equivalent in benefits, pay and conditions of employment upon his return from leave. 29 U.S.C. § 2614 (a).

Section 2615 (a)(1) of the FMLA makes it unlawful for an employer, such as GE, to interfere with, restrain, or deny the exercise of or the attempted exercise of any right or benefit provided by the FMLA. 29 U.S.C. §2615(a)(1). Mann v. Mass. Correa Electric, J.V., 2002 WL 88915 (S.D.N.Y. Jan. 23, 2002) In addition, if an employee was punished or retaliated against for exercising his rights under the FMLA it is also considered to be interference under section 2615 (a)(1). Stevens v. Coach U.S.A., 386 F. Supp. 2d 55, 61 (D. Conn. 2005); Mann v. Mass. Correa Electric, J.V., 2002 WL 88915, at *6 (S.D.N.Y. Jan. 23, 2002). Thus, if you find that GE interfered with Dr. Mody's right to any benefit under the Act, such as his right to reinstatement, or retaliated against him for taking

19

medical leave authorized by the Act, you must rule in favor of Dr. Mody.

In order to prevail on his claims of either interference or retaliation under Section 2615 (a)(1) Dr. Mody need not prove discriminatory intent, he only need show that he was entitled to an FMLA benefit, and denied that entitlement by GE. Smith v. Diffee Ford-Lincoln Mercury, Inc., 298 F. 3d 955, 960 (10th Cir. 2002); Mann v. Mass. Correa Electric, J.V., 2002 WL 88915, at *7 (S.D.N.Y. Jan. 23, 2002). Cross v. Southwest Recreational Indus., Inc., 17 F. Supp.2d 1362, 1368 (N.D. Ga. 1998); Cendant Corp. v. Commissioner of Labor, 2005 WL 2614960, at 5 *(Conn. Oct. 25, 2005).

GE does not dispute that Dr. Mody participated in FMLA protected leave and therefore was entitled to all benefits available to him under the Act, including the right to reinstatement, and the right not to be retaliated against or punished for taking such leave. Thus, you must find GE liable for interfering and/or retaliating with Dr. Mody's rights under the FMLA unless it can prove that it would have made the same decision to terminate Dr. Mody, had he not exercised his FMLA rights.

### *DAMAGES*

Now that I have instructed you as to plaintiff's claims under both state and federal law, I will instruct you on how to calculate plaintiff's damages if you find that defendant violated state or federal law.

### *State and Federal Retaliation & FMLA*

The purpose of money damages is to compensate the victim of wrongful discrimination by putting them in the same position that they would have been in if the wrongful conduct had not occurred. If you find that the defendant wrongfully retaliated against the plaintiff in violation of the ADEA, CFEPA, § 1981, FMLA or Title VII, then you should award the plaintiff the back pay that he would have earned - - that is, his salary, including salary increases you may find that he would

have received - - plus any fringe benefits to which he would have been entitled to [and front pay[1]] less any amount which the defendant has proven by a preponderance of the evidence that the plaintiff has earned from other employment. 29 U.S.C. § 626(b) and (c); Saulpaugh v. Monroe Comm'n Hosp., 62 FEP Cases 1315 (2d Cir. 1993); Whittlesey v. Union Carbide Corp., 742 F.2d 724, 35 FEP Cases 1089 (2d Cir. 1984); Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 43 FEP Cases 143 (11th Cir. 1987). Fringe benefits include, but are not limited to the following items: health benefits, life insurance, pension benefits, stock options and vacation pay. Bonura v. Chase Manhattan, 629 F. Supp. 353 (S.D.N.Y. 1986) aff'd. 795 F.2d 276 (2d Cir. 1986); Blum v. Witco Chem. Co., 829 F.2d 367 (3d Cir. 1987); Buckley v. Reynolds Metals Co., 690 F. Supp. 211 (S.D.N.Y. 1988). The amount of back pay to be awarded is to be computed from the date that you may find that the defendant wrongfully retaliated against the plaintiff until today's date.

The plaintiff is not required to prove with unrealistic precision the amount of lost earnings and benefits, if any, due to him. Any ambiguities in determining what he would have earned should be resolved against the defendant. (Based on Jury Instructions used by Magistrate Judge Guzman in EEOC v. AIC, 823 F. Supp. 571 (N.D. Ill. 1993).)

In determining the amount of such damages, you are not to take into account any money received by the plaintiff from Social Security, Medicare, unemployment compensation or any other collateral source. Dailey v. Societe Generale, 889 F. Supp. 108 (S.D.N.Y. 1995); Maturo v. National Graphics, Inc., 722 F. Supp. 916, 927 (D. Conn. 1989); Bonura v. Chase Manhattan, supra; Beshears

---

[1] The plaintiff assumes that the Court will decide the amount of front pay to be awarded to the plaintiff. See Reed v. A.W. Lawrence & Co., Inc., (2d Cir. 1996). If, however, the Court determines that front pay is an issue for the jury to decide, the plaintiff requests permission to supplement his proposed jury instructions in this regard.

v. Asbill, 930 F.2d 1348 (8th Cir. 1991); Gaworski v. ITT Finance, 17 F.3d 1104, 1113 (8th Cir.

1994), cert. denied, 115 S. Ct. 355 (1994); NCRB v. Gullett Gin Co., 340 U.S. 361, 364

(1951)(deducting unemployment compensation benefits is not making plaintiff whole; no

consideration should be given to collateral benefits).

In determining the amount of back pay, you must make several calculations: First, calculate

the amount of pay and bonuses Dr. Mody would have earned had he remained employed by GE

through today's date. Then, calculate the value of the employee benefits Dr. Mody would have if he

had remained employed by GE to the date of your verdict. In determining the value of the pay and

benefits, the premiums paid by the employer for providing insurance benefits may be used. Then

subtract the amount Plaintiff earned in other employment following his discharge from GE. The

amount of unemployment benefits and accrued vacation which Dr. Mody received at the time of or

after his discharge should not be deducted. You are free to use or to disregard the calculation

provided by Plaintiff's expert in accordance with my instructions as to expert testimony given to you

earlier in my charge.

### *Mitigation of Damages*

The law of damages is that a plaintiff has a duty to take reasonable measures to lessen or

mitigate the amount of economic harm or loss incurred. If the plaintiff fails to utilize ordinary

diligence in finding other employment, he may not recover full back pay, but may be entitled to a

lesser recovery.

However, the burden of proving that the plaintiff did not take reasonable measures to find

and secure employment elsewhere is on the defendant. The defendant has the burden of showing by

a preponderance of the evidence that the plaintiff has failed to exercise reasonable efforts in seeking

other suitable employment. <u>Clark v. Frank</u>, 960 F.2d 1146, 1152 (2d Cir. 1992).

A plaintiff is only required to make reasonable efforts to mitigate damages and is not required to be successful in mitigation or to accept a lesser position. <u>Rasimas v. Michigan Department of Mental Health</u>, 714 F.2d 614, 624 (6th Cir. 1983) <u>cert. denied</u>, 460 U.S. 950 (1984). In addition, the reasonableness of the effort to find substantially equivalent employment should be evaluated in light of the individual characteristics of the plaintiff, such as his age, and the job market. <u>Raimondo v. AMAX, Inc.</u>, 843 F. Supp. 806 (D. Conn. 1994), <u>citing</u> <u>Rasimas, supra</u>.

In order to meet their burden that the plaintiff did not mitigate his damages, the defendant must prove that the plaintiff's mitigation efforts were plainly unreasonable. <u>Rasimas, supra</u>; <u>EEOC v. Kallir, Philips, Ross, Inc.</u>, 420 F. Supp. 919 (S.D.N.Y. 1976), <u>aff'd.</u> 559 F.2d 1203 (2d Cir. 1976), <u>cert. denied</u>, 434 U.S. 920 (1977).

### *Compensatory Damages (CFEPA, Title VII, § 1981)*

If you find for plaintiff on any of the following claims retaliation under Title VII or CFEPA, you must next consider compensatory damages, if any, to be awarded to the plaintiff based on the evidence introduced at trial for his emotional pain and suffering, inconvenience, mental anguish and non-economic damages. No evidence of monetary value of such intangible things as pain and suffering, inconvenience, and mental anguish has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial. Devitt, Blackmar & Wolff, section 104A.11 Compensatory Damages.

Mental anguish, as that term is used in these instructions, means any mental suffering or emotional distress, as distinguished from physical pain and suffering. The term can embrace such

states as nervousness, anxiety, worry, shock, humiliation, indignity, embarrassment, apprehension, or ordeal. Wright & Ankerman, <u>Connecticut Jury Instructions (Civil)</u>, 7-1 Mental Anguish or Emotional Distress - Defined (4th Ed. 1993, Supp. 1996).

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that the plaintiff prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Devitt, Blackmar & Wolff, section 104A.11 Compensatory Damages.

If you find that plaintiff was retaliated against in violation of § 1981 only, front pay is included in the amount of compensatory damages subject to the cap. <u>Rivera v. Baccarat, Inc.</u>, 34 F. Supp 2d 870, 877-78 (S.D.N.Y 1999).

### *Punitive Damages (Title VII, § 1981, CFEPA)*

You may award the plaintiff punitive damages if you find the defendant liable for his claims for retaliation under Title VII, § 1981 and CFEPA. You may make an award even if you find that the plaintiff has failed to establish actual damages. <u>Cush-Crawford v. Adchem Corp.</u>, 271 F.3d 352, 354 (2d Cir. 2001). Punitive damages may be awarded for actions taken with malice or with reckless indifference to the rights of the plaintiff. The defendant acted with "malice" and "reckless indifference" if it acted in the face of a perceived risk of violating federal law, or that it knew or should have known that its actions would violate federal law. <u>Kolstad v. American Dental Association</u>, 527 U.S. 526, 538 (1999). If you determine that the defendant acted with malice or

reckless indifference to the rights of the plaintiff in connection with the allegations made by plaintiff in his Title VII and/or CFEPA claims, then you may award punitive damages to the plaintiff.

### *ADEA (Liquidated Damages)*

If you find that the defendant violated the ADEA, and after you have calculated the back pay damages, if any, to which the plaintiff is entitled, then you are to determine whether such a violation of the ADEA was willful.

The ADEA provides that if a defendant's violation of the Act is "willful," then the plaintiff may also be awarded additional damages equal to the amount of his lost wages and fringe benefits. 29 U.S. C. section 626(b). This additional amount is called liquidated damages.

To determine whether the plaintiff is entitled to liquidated damages you will have to decide whether the defendant willfully violated the ADEA. In order for a violation to be considered willful, the plaintiff must prove by a preponderance of the evidence that the defendant was indifferent to the requirements of the law and acted in a purposeful, deliberate or calculated manner. An employer acting with indifference is one who acts without interest or concern for the rights of others under the law at the time they make their decision; that is, without making any reasonable effort to determine whether the decision not to hire the plaintiff violates the law.

The term "willful" means intentional, knowing or voluntary, as distinguished from accidental, and also includes conduct marked by reckless disregard of whether one has a right to so act.

If you find that the defendant knew or was indifferent to the fact that its conduct - - retaliating against plaintiff for complaining of discrimination on the basis of age and national origin- was prohibited by the ADEA, then you may find that the defendants acted willfully. Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, 1708 (1993); Trans World Airlines v. Thurston, 469 U.S. 111, 105 S. Ct.

25

613 (1985); <u>Benjamin v. United Merchants</u>, 873 F.2d 41 (2d Cir. 1989).

**FMLA Liquidated Damages**

Dr. Mody is entitled to liquidated damages under the FMLA unless GE proves that its FMLA violation was in good faith and that it had reasonable grounds for believing that the act or omission was not a violation of the FMLA. 29 U.S.C. § 2617 (A)(1)(A)(iii). Accordingly, if you find defendant violated the FMLA then you should decide if GE proved to your satisfaction, by a preponderance of the evidence that its violation was done in good faith and that it has a reasonable basis for believing it was not violating the FMLA.

## *CONCLUSION*

While it is the duty of the jurors to confer and deliberate with one another, before arriving at a verdict, nevertheless, if any juror after such deliberation conscientiously reaches a decision on the facts, that juror has no right to surrender his or her decision to the decision of the majority, if the juror believes that his or her decision is correct.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. In other words, your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to your own individual judgment. Each of you must decide the case for yourself. You should not surrender your honest conviction as to the weight and effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are the judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

You will have with you in the jury room all of the exhibits, a copy of these instructions, and the verdict form. You may notice that the written copy of the instructions is divided by headings which I did not read to you. These headings have no significance except to identify the topics so that we can find them in reference books. Pay no attention to them.

When you retire to your jury room, you will elect one of your own members as foreperson, and he or she will preside over your deliberations and will be your spokesperson here in court.

If you have any questions you wish to ask during deliberations, do so by a written note, signed by your foreperson and delivered to the court officer outside the jury room door.

Now proceed to your deliberation in the jury room. Determine the facts on the basis of the evidence, as you have heard it, and apply the law as I have outlined it to you. Render your verdict fairly, uprightly, and without a scintilla of prejudice. When you have reached your verdict, inform the clerk through the court officer. Then you will return to the courtroom and announce your verdict. *Standard Jury Charge of Magistrate Holly B. Fitzsimmons.*

Dated: April 28, 2006

By_____
    Scott R. Lucas (ct00517)
    Claire E. Ryan (ct22145)
    *Attorneys for Plaintiff*
    Martin Lucas & Chioffi, LLP
    177 Summer Street
    Stamford, CT 06901
    Phone: (203) 973-5200
    Fax: (203) 973-5250
    slucas@mlc-law.com
    cryan@mlc-law.com

## *CERTIFICATE OF SERVICE*

This is to certify that on this 28th day of April 2006, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties, as listed below, by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

Richard Voigt, Esq.
Robert J. Gallo, Esq.
CityPlace I, 185 Asylum Street
Hartford, CT 06103
Phone: (860) 275-6700
Fax: (860) 724-3397
rvoigt@mccarter.com
rgallo@mccarter.com

Grace Han, Esq.
GE Consumer & Industrial
41 Woodford Avenue
Plainville, CT 06062
Phone: (860) 747-7408
Fax: (860) 747-7079
Grace.han@ge.com

By _____
Scott R. Lucas (ct00517)
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com