UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **HEMANT K. MODY** | : 04cv358 |
| | : |
| v. | : |
| | : |
| **GENERAL ELECTRIC COMPANY** | : |
| | : |

<u>Ruling on Plaintiff's Post-Trial Motion
For Court-Awarded Statutory
Liquidated Damages, Front Pay,
Pre- And Post-Judgment Interest,
Supplemental Back Pay, Lost Life Insurance
And Stock Options</u>

In this action, plaintiff Hemant Mody alleged retaliation based on race, national origin, and age discrimination in violation of Title VII, 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), and the Connecticut Fair Employment Practices Act ("CFEPA"); and retaliation based on taking leave under the Family Medical Leave Act ("FMLA").

This case was tried to a jury on July 10 through 14, and July 17 and 18, 2006. On July 18, 2006, the jury rendered its answers to the special verdict form in favor of the plaintiff on his claims of retaliation based on race, national origin, and age, and against plaintiff on his claim of retaliation based on FMLA. The jury found that plaintiff should be awarded $591,423 in back pay, $500,000 in compensatory damages, and $10 million in punitive damages. Additionally, the jury determined that plaintiff was entitled to an award of liquidated damages due to a willful violation of the ADEA.

Plaintiff now moves for judgment to enter consistent with the jury's special verdict findings with adjustment on the back pay, pre- and post-judgment interest, and the

appropriate amount of liquidated damages.  Plaintiff also requests relief in the form of front pay.  For the following reasons, the Court will grant plaintiff's motion in part.

## DISCUSSION

### Back Pay Award

On the special verdict form, the jury indicated that plaintiff was entitled to $591,423 in back pay.[1]  Plaintiff requests the Court to enter judgment on the back pay award with an additional pro rata increase including pre-judgment interest to compensate for the time between the rendering of the special verdict and the entry of judgment.

Plaintiff is entitled to back pay from the date of discharge until the date of judgment.  Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 167 (2d Cir. 1998).  Further, plaintiff is entitled to an award of pre-judgment interest on the back pay award.  An award of pre-judgment interest serves to "compensate the plaintiff for loss of the use of money wrongfully withheld."  Reichman v. Bonsignore, Brignati & Mazotta P.C., 818 F.2d 278, 281 (2d Cir. 1987). In a suit to enforce a federal right, whether to award pre-judgment interest is left to the discretion of the district court, which must consider 1) the need to fully compensate the wronged party for actual damages suffered, 2) fairness and the relative equities of the award, 3) the remedial purpose of the statute involved, and/or 4) such other principles deemed relevant by the court.  Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998).   "[I]t is ordinarily an abuse of discretion not to include

---

[1] The Court had instructed the jury that back pay "may include salary, salary increases that you find he would have received, and any fringe benefits to which he would have been entitled."

pre-judgment interest. . ." on an award of back pay in an employment discrimination case. Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164 (1994).

Plaintiff has submitted a revised expert report calculating back pay and pre-judgment interest at an amount of $639,303, which is adjusted to October 8, 2006. Since almost a month has passed since that date, the Court will allow plaintiff an opportunity to submit another revised expert calculation adjusting the back pay to November 6, 2006. Accordingly, judgment will enter on the back pay award and pre-judgment interest after plaintiff submits the revised calculation of back pay and prejudgment interest.

Liquidated Damages

The ADEA provides for liquidated damages in the event of a willful violation of the statute. 29 U.S.C. § 626(b). The Court must now determine the appropriate amount to award on liquidated damages since the jury determined that plaintiff should be awarded liquidated damages due to a willful violation of the ADEA. Plaintiff submits that the Court should reach the liquidated damages award by doubling the amount of the back pay award including the pre-judgment interest and tax adjustment.[2] Defendant counters that the award of liquidated damages should not include pre-judgment interest or the tax adjustment factored into the back pay calculation by plaintiff's expert.

Liquidated damages under the ADEA are tied to the amount of pecuniary loss or

---

[2]The parties agree that the award on back pay appears to have adopted the expert report which included interest compounded annually at the rate enumerated pursuant to 28 U.S.C. § 1961(a) and the tax adjustment.

3

harm suffered by the plaintiff. See Paolitto v. John Brown E. & C., Inc., 151 F.3d 60, 67 (2d Cir. 1998). Section 626(b) directs that the "amounts owing" resulting from a violation of the ADEA shall be determined in accordance with the Fair Labor Standards Act ("FLSA") § 216, which provides for damages "in the amount of . . . unpaid minimum wages, or . . . unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  While the FLSA provides for mandatory awards of liquidated damages, an award of liquidated damages under the ADEA is allowed "only in cases of willful violations."  Thus, the FLSA's liquidated damages are considered to be compensatory, Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997), and the ADEA's liquidated damages are punitive in nature.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (1985).  This distinction bears upon the parties' competing calculations of the proper amount of liquidated damages.

The Court first addresses defendant's position that the liquidated damages award should not include the pre-judgment interest awarded on the back pay. Generally, district courts have determined liquidated damages in accordance with plaintiff's actual damages or back pay award absent pre-judgment interest.  See Altman v. Port Authority of New York and New Jersey, 879 F.Supp. 345, 352 (S.D.N.Y. 1995). Some courts have reasoned that a pre-judgment interest award should not be awarded on liquidated damages since pre-judgment interest and liquidated damages serve differing compensatory and punitive functions, respectively.  See Criswell v. Western Airlines, Inc., 709 F.2d 544, 557 (9th Cir. 1983); Rosasa v. Hudson River Club Restaurant, 1998 WL 106141 (S.D.N.Y.); cf. Fink v. City of New York, 129 F.Supp.2d

4

511, 526 (E.D.N.Y. 2001) (noting that pre-judgment interest is not appropriate on an award of liquidated damages under analogous provision of Uniformed Services Employment and Reemployment Rights Act).  In exercise of its discretion and in accordance with the purposes of the ADEA, the Court declines to include pre-judgment interest in plaintiff's liquidated damages award.

However, the Court rejects defendant's invitation to deduct the tax adjustment, which amount is integral to the amount of plaintiff's actual pecuniary harm.

Accordingly, the Court will enter judgment on the liquidated damages on an amount adjusted to November 6, 2006 consistent with the foregoing discussion.

Front Pay

Plaintiff requests $1,920,368, the value of plaintiff's income for approximately thirteen years until he becomes 65 years old.  Defendant argues that plaintiff's request for front pay should be denied in its entirety because 1) plaintiff has not made reasonable efforts to avail himself of comparable employment opportunities, and 2) plaintiff's position may have been eliminated prior to 2019.

To compensate a plaintiff for future damages after a wrongful discharge pursuant to the ADEA, a court may exercise its discretion by ordering reinstatement or an award of front pay as equitable relief.[3]  See Dominic v. Consolidated Edison Co. Of N.Y., Inc., 822 F.2d 1249, 1258 (2d Cir. 1987).    An award of front pay is appropriate where reinstatement is not possible due to hostility or antagonism between the parties. Pollard v. El du Pont de Nemours & Co., 532 U.S. 843, 846 (2001).  Front pay serves

---

[3] In this instance, neither party argues that reinstatement is a viable remedy.

to make a wronged plaintiff whole where the factfinder can predict that plaintiff has no reasonable prospect of obtaining comparable alternative employment. Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (2d Cir. 1984). A request for front pay may be denied if the court finds that the back pay award is sufficient to make the plaintiff whole. Saulpaugh, 4 F.3d at 145.

The Court first addresses whether plaintiff is entitled to front pay regardless of whether defendant would have eliminated his position even absent retaliatory animus. In considering a front pay award, the Court must take into account plaintiff's ability to mitigate his damages in the future, his age, education, training, work experience, skills, job market and reasonable prospects of obtaining comparable employment. Shorter v. Hartford Financial Services Group, Inc., 2005 WL 2234507*3 (D. Conn.).

Employees who have been terminated have a duty to "use reasonable diligence in finding other suitable employment." Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231 (1982). However, that duty is not onerous. Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997). Plaintiff must have acted reasonably "in attempting to gain other employment or in rejecting proffered employment." Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 695 (2d Cir. 1998). Suitable employment is a "substantially equivalent" job to that of plaintiff's former position. See Ford Motor Co., 458 U.S. at 232. A plaintiff must demonstrate reasonable effort in seeking such suitable employment, yet it is the employer who bears the ultimate burden of proving that suitable work existed and that the employee failed to avail himself of such opportunities. N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 112 (2d Cir. 1999). The court may tailor the period for which front pay is calculated to the extent of plaintiff's efforts to find

comparable employment.  Brenlla v. Lasorsa Buick Pontiac Chevrolet, 2002 WL 1059117*10 n.7 (S.D.N.Y.)

In this instance, plaintiff is a 52-year old male with serious health conditions, including severe chronic renal disease requiring 12 hours of daily dialysis treatment and a heart condition that has resulted in two heart attacks during the past three years.  At present, plaintiff awaits a kidney replacement operation.

Plaintiff explained at trial that he has made efforts to find a suitable position through inquiries with his friends and other contacts, posting his resume with employment services, and reviewing job advertisements.  He testified that he was not purposely remaining unemployed.  During the past three years, he applied without success for positions related to the stock market and engineering.  Although the evidence does not suggest that plaintiff is totally disabled from work and therefore ineligible for front pay, see Saulpaugh, 4 F.3d at 145, his prospects of securing "suitable" employment are severely diminished by his age, health condition and dialysis needs.  Further, defendant has not persuaded the Court that plaintiff would be able "to find work commensurate with his skills at a salary equal to what he received" before his demotion.  Padilla v. Metro-North Commuter Railroad, 92 F.3d 117, 126 (2d Cir. 1995).  Thus, the Court will not deny plaintiff's request for front pay on the ground of failure to mitigate his damages.

However, defendant presented evidence concerning the financial challenges facing plaintiff's department, in particular funding positions that were not related to product implementation.  Nevertheless, defendant provided no actual evidence that it had planned an implementation of a reduction-in-force, and as plaintiff points out,

7

transfers had been allowed within the corporation in order to retain qualified individuals. While the Court is not persuaded that plaintiff's position was secure until 2019, defendant has not fully demonstrated that plaintiff's position would have been eliminated prior to September 2006. In light of plaintiff's on-going work on the magic panel project and his positive performance ratings prior to his discrimination complaint, it is not unreasonable to conclude that plaintiff would have been employed at least eight years beyond his April 2003 discharge. The Court will award front pay until April 2011. The Court requests plaintiff to provide an amount for the front pay award reflecting his income and benefits, consistent with the discussion below, from November 2006 through April 2011.

### Life Insurance

Plaintiff requests, as part of the front pay award, compensation for the value of his lost life insurance proceeds in the amount of $570,000, since plaintiff is unable to secure life insurance due to his deteriorating health condition. Defendant objects on the basis that the proper measure of damages is either the amount paid in premiums on employee's behalf, or the amount paid to obtain comparable insurance. Shkolnik v. Combustion Eng'g, Inc., 856 F.Supp. 82, 88 (D.Conn. 1994).

The Court retains jurisdiction to grant such equitable relief to ensure that plaintiff be made whole. See 29 U.S.C. § 626(b); Wittlesey v. Union Carbide Corp., 742 F.2d 724, 727-28 (2d Cir. 1984). However, the Court finds it inappropriate to saddle defendant with the full value of plaintiff's insurance proceeds payable upon plaintiff's death. See Fariss v. Lynchburg Foundry, 769 F.2d 958, 965 (4th Cir. 1985) (discussing obvious disincentive to employers for providing life insurance benefits if faced with

enormous potential liability for insurance proceeds). The life insurance premiums have already been incorporated into plaintiff's expert report on future lost benefits, which the Court will award for the period between November 2006 through April 2011.

### Stock Options

Plaintiff also seeks, as part of the front pay award, the value of stock options that he would have received in appreciation for his skills and work. Defendant asserts that plaintiff has failed to prove such damages with a reasonable degree of certainty.

The Court cannot afford plaintiff this compensation without entering into undue speculation. Plaintiff, whose employment commenced with defendant in 1998, testified that he received stock options in appreciation for his work in 2001 and 2002. Thus, plaintiff's proof of his entitlement to stock options is grounded on only a two year history. Further, it is not possible to arrive at the amount of discretionary stock options that plaintiff would have received even assuming continuation of this benefit. Accordingly, the Court will deny the request for stock options.

### Post-Judgment Interest

Defendant does not dispute that plaintiff is entitled to post-judgment interest on the entire award comprising back pay, front pay, and punitive and compensatory damages pursuant to 28 U.S.C. § 1961(a).

## Conclusion

For the foregoing reasons, plaintiff's post-trial motion for court-awarded statutory liquidated damages, front pay, pre- and post-judgment interest, supplemental back pay, lost life insurance and stock options [doc. #127] is GRANTED in part and DENIED in part. The Court will enter judgment awarding compensatory damages, back pay, pre-

judgment interest, liquidated damages, and front pay after plaintiff submits calculations of the back-pay, liquidated damages and front pay adjusted to November 6, 2006 and consistent with this Ruling.  The plaintiff is instructed to submit these adjusted calculations within 10 days of this Ruling's filing date.

Dated this 25th day of October 2006, at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge